UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Case No. 1:20-bk-00841-HWV |
| | : | |
| Craig Bradley Deimler | : | |
| William Oliver Fisher-Deimler | : | |
|     Debtors/Movants | : | Chapter 13 |
| | : | |
| Craig Bradley Deimler | : | |
| William Oliver Fisher-Deimler | : | |
|     Movants/Objectors | : | Objection to Proof of Claim #34 |
| v. | : | |
| | : | |
| John Simpkins | : | |
| Cindy Simpkins | : | |
|     Respondents/Claimants | : | |

## **OPINION**

This matter comes before the Court on the Objection of Craig Bradley Deimler ("Mr. Deimler") and William Oliver Fisher-Deimler ("Mr. Fisher-Deimler" and collectively with Mr. Deimler, the "Debtors") to Proof of Claim Number 34 filed by John Simpkins and Cindy Simpkins (the "Claimants"), and the Response filed thereto.

### **I. Jurisdiction**

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. § 1334(b). This is a core proceeding pursuant to 28 U.S.C. §§ 151, 157(b)(2)(A) and 157(b)(2)(B). Venue is proper pursuant to 28 U.S.C. § 1409(a).

### **II. Facts and Procedural History**

On August 20, 2018, the Claimants signed a contract with Deimler Family Construction to remodel their laundry room, kitchen, and full bathroom (the "Contract"). Claimants' Am. Br. 1, ECF No. 125. According to the Claimants, the project did not go well and they "were forced to hire and pay another contractor to rip out and redo the work for which they had contracted with Deimler Family Construction." Claimants' Am. Br. 1  The Claimants did not make final

1

payment to Deimler Family Construction under the Contract and after paying a new contractor to complete the project they claim that "they are out of pocket a net additional cost of $130,000.00." Claimants' Am. Br. 1.

On March 4, 2020, the Debtors filed their voluntary petition under chapter 13 of Title 11, U.S.C. (the "Code"). In their schedule of assets and liabilities filed with this Court on March 12, 2020, the Debtors disclose 100% ownership in an entity named "GCD Construction Inc dba Deimler Family Construction." Schedule A/B 6, ECF No. 20. Contemporaneous with that filing, the Claimants filed Proof of Claim No. 34-1 asserting an unsecured nonpriority claim in the amount of $130,000.00 resulting from an alleged breach of contract (the "Claim").

On June 24, 2020, the Debtors filed their "Objection to Proof of Claim #34" (the "Objection") asserting, among other things, that the Claim failed to attach the "writing" upon which it was based as required by Federal Rule of Bankruptcy Procedure 3001(c). Objection 1 ¶¶ 3-4. The Debtors further assert that the Contract, which was subsequently provided in support of the Claim, "demonstrate[s] that the obligation is owed by GCD Construction, Inc., dba Deimler Family Construction" and not the Debtors individually. Objection 2 ¶ 6. In support of this assertion, the Debtors specifically contend that: (1) their individual names are not identified anywhere in the documentation; (2) they have not personally guaranteed the obligation; and (3) they are not personally liable for the corporate debt of GCD Construction, Inc. Objection 2 ¶¶ 7-9. Because of this, the Debtors argue, the "claim should be disallowed because it is not a debt owed by the Debtor." Objection 2 ¶ 10.

On July 21, 2020 the Claimants filed their "Response to Debtors' Objection to Proof of Claim #34" (the "Response") acknowledging that no documents were attached to the Claim at the time it was filed, but suggesting a cure of that defect when the Contract and other documents

were subsequently provided to the Debtors. The Claimants also acknowledge in their Response that Mr. Fisher-Deimler is not liable to the Claimants and that neither Debtor signed a formal guaranty in connection with the Contract. Response 2 ¶¶ 8-9, ECF No. 62. However, the Claimants specifically deny that the obligation is owed by GCD Construction, Inc. To the contrary, they argue that the obligation is owed by Mr. Deimler, individually. The Claimants advance two theories in support of their argument.

First, they suggest that any reference to "Deimler Family Construction" in the Contract should be interpreted as a direct reference to Mr. Deimler, individually. This is so, they argue, because page nine of the Contract clearly identifies Deimler Family Construction as the Contractor, and Deimler Family Construction is a nothing more than a fictitious name registered to Mr. Deimler, individually. Claimants' Br. 2-3. Because the business name Deimler Family Construction is merely a fiction, they reason, so too is any suggestion that the business Deimler Family Construction is a legal entity separate from its owner, Mr. Deimler. Claimants' Br. 3. Applying this logic, the Claimants assert that Mr. Deimler is the Contractor under the Contract and is thus liable to the Claimants for breach of same. Claimant's Br. 3.

Second, and in the alternative, the Claimants argue that the Contract is ambiguous as to the identity of the party with whom they contracted. Because the Contract was "written by or on behalf of Debtor Craig Deimler, [it] is to be construed against him as drafter in case of any dispute." Response 2 ¶ 7. Under this theory, the Claimants urge the Court to find that Mr. Deimler is the party they contracted with and he is therefore individually liable under the Contract.

A hearing on the Objection and Response was held on August 26, 2020 during which the parties agreed to submit briefs. The Debtors filed their Brief on November 9, 2020 ("Debtors'

3

Brief") and the Claimants filed their Amended Brief in Opposition on December 22, 2020 ("Claimants' Brief"). A status conference was held on January 13, 2021, at which time both parties agreed that a further evidentiary hearing was unnecessary and requested the Court to rule on the Objection. The parties further agreed that the Court need only consider the four corners of the Contract for its ruling. Objection Hr'g 10:25:11-10:25:46, January 13, 2021. The matter was taken under advisement and is now ripe for decision.

### III. Analysis

The question presented here is whether Mr. Deimler is liable to Claimants for breach of contract as stated in the Claim. If he is, then the Objection will be overruled, and the Claim will be allowed pursuant to § 502(b). Conversely, if Mr. Deimler is not liable to Claimants for breach of contract as stated in the Claim, then the Objection will be sustained, and the Claim will be disallowed in its entirety.

The Court begins its analysis by examining the appropriate system of law and the shifting burden of proof for claims brought in the bankruptcy court under § 502(a) of the Code.

**A.     Applicable System of Law**

It cannot be challenged that a creditor's claim in bankruptcy arises in the first instance from the underlying substantive law creating the debtor's obligation, subject to any qualifying contrary provisions of the Code. *Butner v. U.S.*, 440 U.S. 48, 55 (1979). Indeed, the "basic federal rule in bankruptcy is that state law governs the substance of claims" because Congress has "generally left the determination of property rights in the assets of a bankrupt's estate to state law." *Raleigh v. Illinois Dept. of Revenue*, 530 U.S. 15, 20 (2000) (internal quotation marks omitted); *see also Travelers Cas. & Sur. Co. of America v. Pacific Gas and Elec. Co.*, 549 U.S.

4

443, 450 (2007). Accordingly, Pennsylvania law provides the context under which this matter will be decided.

**B.     The Shifting Burden of Proof**

The term "burden of proof" is used to refer to two distinct burdens. The first is the burden of production and the second is the burden of persuasion. *Hurley v. Hurley*, 754 A.2d 1283 (Pa. Super. Ct. 2000).  The burden of persuasion for claims brought in the bankruptcy court under § 502(a) of the Code always rests on the claimant. *In re Allegheny Int'l, Inc.*, 954 F.2d 167, 174 (3d Cir. 1992) (citing *Holm,* 931 F.2d at 623 (additional citations omitted)).  However, the burden of production for bankruptcy claims rests on "different parties at different times." *Id.* at 173.  Initially, the claimants must meet the burden of production by alleging facts sufficient to support their claim. *Id*.  If the averments in their claim meet this standard of sufficiency, it is considered "*prima facie*" valid. *Id*.  The burden then "shifts to the objector to produce evidence sufficient to negate the *prima facie* validity of the filed claim." *Id*.  If they do, then the burden of production "reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *Id*. (citing In re WHET, Inc., 33 B.R. 424, 437 (Bankr.D.Mass.1983)).

With the above burden shifting and applicability of law framework in mind, the Court now turns to the Objection at hand.

**C.     The Objection**

   **1.     Claimants have established a "*Prima Facie*" Claim.**

The first task as outlined above is to determine whether the Claimants have met their initial burden of production regarding the Claim.  To meet this burden, the Claimants must produce sufficient evidence to make a *prima facie* claim for the relief sought or lose summarily.  *See Haygood v. Civil Serv. Comm'n*, 133 Pa.Cmwlth. 517, 576 A.2d 1184, 1185

5

(1990). In the context of a claim brought under § 502(a) of the Code, the initial burden of production is satisfied if the claim alleges sufficient facts for a bankruptcy court to reasonably infer the truth of the liability alleged. When making this determination, the bankruptcy court must give the claimants the benefit of every fact and every inference that may reasonably be deduced from the evidence and must resolve all conflicts in their favor. *See* Lear *v. Shirk's Motor Exp. Corp.*, 397 Pa. 144, 152 A.2d 883, 885 (1959). The bankruptcy court may not assess credibility or gauge the weight of the evidence at this stage. *See Beary v. Pennsylvania Elec. Co.*, 322 Pa.Super. 52, 469 A.2d 176, 179 (1983).

Under this standard, the Court finds that the Claimants have alleged sufficient facts to establish a *prima facie* claim and to avoid losing summarily on their Claim. To begin, the Claim asserts a liability in the amount of $130,000.00 for breach of contract. Similarly, the Contract supporting the Claim references a "Total Sales Price" of $126,258.04, which is consistent with the liability asserted on the Claim.[1] Claimants' Am. Br. 1; Ex. Contract 7, 8 ECF No. 112. Also, the Claimants signed the Contract in a section captioned "Owners Acceptance" for the purpose of engaging a "Contractor" to provide materials and labor for home improvement. In like manner, Mr. Deimler appears to have signed the Contract in a section captioned "Contractor's Acceptance" for the purpose of binding the Contractor to provide materials and labor for home improvement. Ex. Contract 8. Implicit in the Claim, therefore, is the assertion that Mr. Deimler is the Contractor under the Contract and is therefore individually liable to Claimants for the alleged breach of same.

Giving the Claimants the benefit of every fact and every inference that may be reasonably deduced from the Claim and the Contract, and resolving all conflicts in their favor, the Court can

---

[1] The Contract was not attached to the Claim at the time of its filing. By agreement of the parties, however, the Court is resolving this matter as if it was. Debtors' Br. 2

reasonably infer the truth of the liability asserted in the Claim. If Mr. Deimler is indeed the Contractor under the Contract, then he may truly be liable to the Claimants for the breach of same. Accordingly, the Court finds that the Claimants have alleged sufficient facts to establish a *prima facie* claim and to avoid losing summarily on same. This does not end the inquiry, however, as the burden of production now shifts to the Debtors to produce evidence sufficient to negate the *prima facie* validity of the Claim. *In re Allegheny Int'l, Inc.*, 954 F.2d at 174.

### 2. Evidence exists to refute the "*Prima Facie*" Claim.

It is often said that to negate the *prima facie* validity of a claim, the objecting party "must produce evidence equal in force to the *prima facie* case." *In re Allegheny Int'l, Inc.*, 954 F.2d at 173-174, citing *In Holm*, 931 F.2d at 623 (additional citations omitted.) "In practice, the objector must produce evidence which, if believed, would refute at least one of the allegations that is essential to the claim's legal sufficiency." *Id*. Here, the Court finds that the Debtors have produced evidence equal in force to the *prima facie* case which refutes at least one of the allegations that is essential to the Claim's legal sufficiency. Specifically, the Debtors make several observations that refute the essential allegation that Mr. Deimler is the Contractor under the Contract and is therefore liable to Claimants for the alleged breach of same.

The Debtors' leading observation in this regard is that the signature block on page eight of the Contract identifies the Contractor as "GCD Construction, Inc., dba Deimler Family Construction." Ex. Contract 8. In contrast to that, the Debtors note that Mr. Deimler's individual name does not appear anywhere in the text of the Contract. Debtors' Br. 3. Continuing with this theme, the Debtors next observe that the Contract is written on letterhead in the name of Deimler Family Construction, which is the business name attributed to GCD Construction, Inc. in the signature block of the Contract. Debtors' Br. 2. They further note that

7

"[e]very single page of the first eleven pages of the contract includes GCD Construction, Inc.'s name and address at the bottom left hand corner" and that the "Respondent, Cynthia Kramer initialed each of [those] pages." Debtors' Br. 2. Thereafter, the Debtors observe that page nine of the Contract plainly states that "Deimler Family Construction (hereinafter referred to as Contractor) agrees to complete the work." Debtors' Br. 2. Again, Deimler Family Construction is the business name attributed to GCD Construction, Inc. in the Contract. Finally, the Debtors note that "[e]very single page of the sketches (contract pages 12 through 24) includes the copyright language of GCD Construction" as follows:

> "COPYRIGHT (c) 2012 BY GCD CONSTRUCTION INC. ALL PLANS AND SPECIFICATIONS OF GCD CONSTRUCTION INC. ARE THE PROPERTY OF GCD CONSTRUCTION INC. NO USE OR ALTERATIONS TO PLANS OR SPECIFICATIONS MAY BE MADE WITHOUT WRITTEN APPROVAL FROM GCD CONSTRUCTION INC."

Debtors' Br. 3.

According to the Debtors, each of the above observations "make[] it clear that the contract is with GCD Construction, Inc. and not" Mr. Deimler, individually. Debtors' Br. 3. As such, the Debtors argue that Mr. Deimler is not the Contractor under the Contract and is therefore not liable to Claimants for the alleged breach of same. Debtors' Br. 3.

The Court finds the Debtors have indeed produced evidence equal in force to the *prima facie* case that refutes at least one of the allegations essential to the Claim's legal sufficiency. Specifically, the Debtors' observations utterly refute the essential allegation that Mr. Deimler is the Contractor under the Contract and is therefore liable to Claimants for the alleged breach of same. Accordingly, the burden now reverts to the Claimants to prove the validity of their Claim.

8

### 3. Claimants have not met their burden of persuasion.

The Court finds that the Claimants have not proven the validity of their Claim by a preponderance of the evidence.[2] Specifically, the Claimants have failed to establish that Mr. Deimler is the Contractor under the Contract. This is so because the express language of the Contract unambiguously identifies the Contractor as GCD Construction, Inc., dba Deimler Family Construction, not Mr. Deimler individually. Further, the Claimants have failed to advance any other theory of law under which Mr. Deimler could be a party to the Contract. Because Mr. Deimler is not a party to the Contract, he cannot be liable to Claimants for the alleged breach of same.[3] The Objection will therefore be sustained.

It is well settled under Pennsylvania law that the "paramount goal of contract interpretation is to determine the intent of the parties." *American Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 587 (3d Cir. 2009) (quoting *Garden State Tanning, Inc. v. Mitchell Mfg. Group, Inc.*, 273 F.3d 332, 335 (3d Cir. 2001)). It is equally resolved that Pennsylvania contract law begins with the firmly settled principle that "the intent of the parties to a written contract is contained in the writing itself." *Krizovensky v. Krizovensky,* 624 A.2d 638, 642 (Pa. Super. Ct. 1993) (citing *Steuart v. McChesney,* 444 A.2d 659, 661 (Pa. 1982)). Indeed, "the focus of interpretation is upon the terms of the agreement as manifestly expressed, rather than as, perhaps, silently intended." *Steuart*, 444 A.2d at 661. Where the words are clear and unambiguous, the

---

[2] A preponderance of the evidence is "the greater weight of the evidence, *i.e.*, to tip a scale slightly is the criteria or requirement for preponderance of the evidence." *In re Navarra*, 185 A.3d 342, 354 (Pa. Super. Ct. 2018) (quoting *Raker v. Raker*, 847 A.2d 720, 724 (Pa. Super. Ct. 2004); See also *O'Toole v. Borough of Braddock*, 397 Pa. 562, 564, 155 A.2d 848, 850 (1959) ("When the jury finds that the pan on the plaintiff's side of the scales of justice has descended below the horizontal, while the defendant's dish has risen above the level plane, the plaintiff has met his burden ...").

[3] "It is fundamental contract law" in Pennsylvania "that one cannot be liable for a breach of contract unless one is a party to that contract." *Accurso v. Infra-Red Servs., Inc.*, 23 F. Supp. 3d 494, 503 (E.D. Pa. 2014) (quoting *Electron Energy Corp. v. Short,* 597 A.2d 175, 177 (Pa.Super.Ct.1991), *aff'd,* 618 A.2d 395 (Pa. 1993)).

intent of the parties must be determined from "the express language of the agreement" and there is no need to resort to extrinsic aids or evidence. *Id.*

A contractual provision is considered ambiguous under Pennsylvania law only where the disputed language "'is reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one.'" *Samuel Rappaport Family Partnership v. Meridian Bank*, 657 A.2d 17, 21–22 (Pa. Super. Ct. 1995) (quoting *Z & L Lumber Co. of Atlasburg v. Nordquist*, 502 A.2d 697, 700 (Pa. Super. Ct. 1985)). A writing is also ambiguous when it is "obscure in meaning through indefiniteness of expression or has a double meaning." *Id*. As a preliminary matter, therefore, courts interpreting a writing must determine which category it falls into—clear or ambiguous. *Allegheny Int'l, Inc. v. Allegheny Ludlum Steel Corp.*, 40 F.3d 1416, 1424 (3d Cir. 1994).

The Supreme Court of Pennsylvania has identified two kinds of ambiguity: (1) patent ambiguity; and (2) latent ambiguity. The former appears on the face of the writing and "arises from the defective, obscure, or insensible language used" while the latter arises from "extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." *Id*. (quoting *Steuart,* 444 A.2d at 663) (internal quotations omitted). With this framework in mind, the Court now turns to the Contract to decide whether there are objective indications that the language used to identify the Contractor is "reasonably or fairly susceptible of different constructions and is capable of being understood in more senses than one." The Court has little difficulty determining that there are not.

The governing language can be found in the paragraph titled "Performance of Work" at the top of page nine and in the signature block on page eight of the Contract. ECF No. 112. The

parties agree that the former unambiguously identifies Deimler Family Construction as the Contractor under the contract.[4] Claimants' Br. 2; Debtors' Br. 3. The latter includes the following relevant language:

> **Owner's Acceptance**
> The foregoing terms, specifications, plans as attached (if applicable) and conditions are satisfactory and are hereby agreed to and made part of this agreement.
> *GCD Construction, Inc., d.b.a Deimler Family Construction* is hereby authorized to do the work as specified and payment will be made as outlined above. The owner upon signing this agreement represents and warrants that he is the owner of the aforesaid premises and that he/she has read, and agrees to this agreement and terms and General conditions (below).

Ex. Contract 8 ECF No. 112 (emphasis added). No one has disputed that the Claimant, Cynthia Simpkins, signed the Contract in the space provided just below the above language.

Initially, the Court detects no language in the above provision that could be reasonably susceptible of different constructions or that is capable of being understood in more than one sense. The Court does observe, however, that the letters "d.b.a" appear between the reference to GCD Construction, Inc. and Deimler Family Construction. These letters are commonly understood to mean "doing business as," and they generally introduce an adopted trade name for the named entity they follow.[5] See *Burlington Coat Factory of Pennsylvania, LLC v. Grace Const. Mgmt. Co., LLC*, 126 A.3d 1010, 1024 (Pa. Super. Ct. 2015). As a commonly understood acronym, the language "doing business as" can therefore be substituted for the letters d.b.a as they appear in the signature block. Rewriting the provision in this manner will assist the Court with its determination of whether the language is clear or ambiguous. Doing so yields a

---

[4] The relevant language of this paragraph provides: "Deimler Family Construction (herein after referred to as Contractor) agrees to complete the work in a substantial and workmanlike manner . . .". Ex. Contract 9 ECF No. 112.
[5] Pennsylvania law and Rules of Civil Procedure contemplate that corporations may enter contracts and/or prosecute litigation under fictitious names. *See* 54 Pa.C.S.A. § 331; Pa.R.C.P. 2176 and 2177.

11

provision that reads as follows: GCD Construction, Inc., doing business as Deimler Family Construction.

### a. There is no Patent Ambiguity.

The Court finds the above language clear and unambiguous on its face. Simply put, it introduces Deimler Family Construction as an adopted trade name for GCD Construction, Inc. When read within the context of the unchallenged language at the top of page nine, its meaning becomes unmistakable: GCD Construction, Inc. is the Contractor under the Contract. No part of the language examined here is reasonably or fairly susceptible of a different construction, nor is it capable of being understood in more than one sense. The language is not otherwise obscure in meaning through indefiniteness of expression and does not have a double meaning. Furthermore, these conclusions do not change when the provisions are read within the context of the remaining language of the Contract. To the contrary, the obvious meaning of the clear and unambiguous language examined here is in perfect harmony with the remaining language of the Contract. It allows no room for doubt as to the identity of the Contractor: The Contractor is GCD Construction, Inc. This Court thus concludes that the language of the Contract is not patently ambiguous regarding the identity of the Contractor, which is GCD Construction, Inc.

As noted above, however, ambiguity in a contract can be either patent or latent. While a patent ambiguity appears on the face of the instrument, "a latent ambiguity arises from extraneous or collateral facts which make the meaning of a written agreement uncertain although the language thereof, on its face, appears clear and unambiguous." *Duquesne Light*, 66 F.3d at 614 (*citing Easton v. Washington County Ins. Co.,* 391 Pa. 28, 137 A.2d 332 (1957)). The Claimants in the present case essentially argue that the language of the Contract, though clear on its face, nonetheless suffers from a latent ambiguity regarding the identity of the Contractor.

12

Specifically, they claim that the words "Deimler Family Construction" should be interpreted as a direct reference to Mr. Deimler individually rather than to GCD Construction, Inc. as plainly stated in the Contract. Unfortunately for the Claimants, Pennsylvania law on contract interpretation and ambiguity compels the Court to reject this argument.

      **b.**      **There is no Latent Ambiguity.**

It is well settled that a "contract that is unambiguous on its face must be interpreted according to the natural meaning of its terms, unless the contract contains a latent ambiguity, whereupon extrinsic evidence may be admitted to establish the correct interpretation." *Bohler-Uddeholm Am., Inc. v. Ellwood Grp., Inc.*, 247 F.3d 79, 96 (3d Cir. 2001). To determine whether ambiguity exists in a contract, the court may consider "the words of the contract, the alternative meaning suggested by counsel, and the nature of the objective evidence to be offered in support of that meaning." *Id*. at 93 (citing *Mellon Bank, N.A. v. Aetna Bus. Credit, Inc.,* 619 F.2d 1001, 1011 (3d Cir.1980)). Extrinsic evidence offered to support a claim of latent ambiguity must show that some specific term or terms in the contract are ambiguous. *Id*. It cannot simply show that the parties intended something different that was not incorporated into the contract. *Id*. Instead, the proper focus of the extrinsic evidence in resolving an instance of latent ambiguity is the parties' "objectively manifested 'linguistic reference'" regarding the ambiguous term, not their expectations. *Id.* at 94 n. 3 (quoting *Duquesne Light Co. v. Westinghouse Elec. Corp.,* 66 F.3d 604, 614 (3d Cir.1995)). The parties' expectations, standing alone, are irrelevant without any *contractual hook* upon which to pin them. *Id*. (citing *Mellon Bank, N.A.* 619 F.2d at 1011 n. 12.

Furthermore, the alternative meaning that a party seeks to ascribe to the specific term in the contract must be reasonable; courts must resist twisting the language of the contract beyond

13

recognition. *Bohler-Uddehol*, 247 F.3d at 93. "In holding that an ambiguity is present in an agreement, a court must not rely upon a strained contrivancy to establish one; scarcely an agreement could be conceived that might not be unreasonably contrived into the appearance of ambiguity. Thus, the meaning of language cannot be distorted to establish the ambiguity." *Id*. (citing *Steuart* 444 A.2d at 663 (1982)).

The Claimants' argument for latent ambiguity in the present case begins by admitting that the Contract plainly identifies Deimler Family Construction as the Contractor, and that the Contract is written on letterhead in the name of Deimler Family Construction. Claimants' Br. 2-3. The Claimants also acknowledge that the signature block on page eight of the Contract contains a reference to "GCD Construction, Inc., d.b.a Deimler Family Construction." Claimants' Br. 2. However, unlike the Debtors, the Claimants assert that this reference to "GCD Construction, Inc. d.b.a Deimler Family Construction" in the signature block merely "authorize[s] GCD Construction, Inc. to perform the work under the Contract" but does not serve to identify GCD Construction, Inc. "as a party to the Contract." Claimants' Br. 3. Also distinct from the Debtors, the Claimants assert that every other reference to Deimler Family Construction in the Contract should be interpreted as a direct reference to Mr. Deimler individually rather than to GCD Construction, Inc. Claimants Br. 3. The Claimants base each of these assertions upon information that is extrinsic to the Contract, however, rather than upon information found within it.

Specifically, the Claimants first rely upon a document from the Pennsylvania Department of State demonstrating that "Deimler Family Construction is a fictitious name owned by and registered . . . to Debtor Craig Deimler."[6] Claimants' Br. 3. Second, the Claimants rely upon a

---

[6] The Claimants further assert that the "purpose of registering a fictitious name is so that it can be known who is operating under that name. Had GCD Construction, Inc. wanted to operate as Deimler Family Construction, it could

14

docket report from Magisterial District Court Number 12-2-01 to demonstrate that "as recently as the end of 2019, Debtor Craig Deimler was . . . operating as Deimler Family Construction." Claimants' Br. 3. Next, the Claimants rely upon information from a social network website that focuses on professional networking and career development to demonstrate that Mr. Deimler "held himself out to the public as the owner of Deimler Family Construction." Claimants' Br. 3. Finally, the Claimants rely upon information from a website dedicated to providing homeowners with home design assistance to demonstrate that "Deimler Family Construction advertised itself, but not as a part of GCD Construction, Inc." Claimants' Br. 3.

It is not improper for the Court to consider the extrinsic evidence offered by Claimants to establish their claim of latent ambiguity. However, the evidence offered here improperly focuses upon the Claimants' expectations, rather than an objectively manifested linguistic reference. At best, the evidence shows that information originating from outside the Contract, and thus not forming a part of or belonging to it, demonstrates that Mr. Deimler conducts or at one time conducted business as "Deimler Family Construction."[7] This evidence appears to be offered to prove Claimants' doubt and uncertainty regarding the identity of the Contractor. The only contractual hook for this uncertainty, however, is the argument that the reference to "GCD Construction, Inc. d.b.a Deimler Family Construction" in the signature block merely

---

have taken ownership of the fictitious name from Debtor Craig Deimler." Claimants' Br. 3. Since GCD Construction, Inc. did not own the fictitious name Deimler Family Construction, they conclude, it "had no legal right to use or conduct business under that name." Claimants' Br. 3.

[7] Pennsylvania law (the Fictitious Names Act) appears to recognize this possibility. See 54 Pa. Stat. and Cons. Stat. Ann. § 303 (West) ("The registration of a name under this chapter does not render the name unavailable for use by another entity."). Moreover, the consequences for conducting business under an unregistered trade name appear to be limited to the payment of a $500.00 civil penalty and a prohibition against maintaining an action in any Commonwealth tribunal until compliance with the statute occurs. See 54 Pa. Stat. and Cons. Stat. Ann. § 331 (West). Importantly, the statute clearly provides that the "failure of any entity to register a fictitious name as required by this chapter shall not impair the validity of any contract or act of such entity and shall not prevent such entity from defending any action in any tribunal of this Commonwealth." 54 Pa. Stat. and Cons. Stat. Ann. § 331 (West)

"authorize[s] GCD Construction, Inc. to perform the work under the Contract" but does not serve to identify GCD Construction, Inc. "as a party to the Contract." The Claimants further argue that the references to both "Deimler Family Construction" and "GCD Construction, Inc." throughout the Contract is confusing. Unfortunately for the Claimants, the Court has already considered and rejected these arguments. Accordingly, the basis for the Claimants confusion regarding the identity of the Contractor lacks a credible "contractual hook."[8] As such, the extrinsic evidence here can only be offered to demonstrate the Claimants' expectations, rather than to resolve an ambiguity based upon an impartial understanding of language within the Contract. This is precisely the kind of extrinsic evidence that Pennsylvania law deems irrelevant within the context of contract interpretation and ambiguity.

The argument also fails as a matter of law for another reason. The alternative meaning that the Claimants seek to ascribe to the term "Contractor" is not reasonable. This Court has already concluded that the language of the Contract is not patently ambiguous regarding the identity of the Contractor. Thus, concluding that the term "Contractor" could mean either GCD Construction, Inc. or Mr. Deimler individually, as the Claimants urge here, would require the Court to twist the language of the Contract beyond recognition. The Court will not do so.

### c. Pennsylvania Agency Law

The above conclusion also finds support in Pennsylvania law on agency. In Pennsylvania, "an individual acting as an agent for a disclosed [principal] is not personally liable on a contract between the [principal] and a third party unless the agent specifically agrees to assume liability." *In re Estate of Duran,* 692 A.2d 176, 179 (Pa.Super.Ct.1997) (citations omitted); *see also Publicker Indus., Inc. v. Roman Ceramics Corp.,* 652 F.2d 340, 343 (3d

---

[8] The Claimants also failed to establish that the extrinsic evidence offered formed the basis of their confusion regarding the identity of the Contractor.

Cir.1981). The Pennsylvania Supreme Court has held that, "[i]f the alleged contract is in the name of the agent, but the name of the principal is disclosed, there exists a strong presumption that it is the intention of the contracting parties that the principal and not the agent should be a party to the contract." *Viso,* 369 A.2d at 1187. A principal is a disclosed principal if "at the time of a transaction conducted by an agent, the other party thereto has notice that the agent is acting for a principal and of the principal's identity." *Bhakta v. Shah,* No. 07-CV-3065, 2008 WL 5101638, at *3 (E.D. Pa. Dec. 2, 2008). A person has notice that the agent is acting for a principal if "he has actual knowledge of it, has reason to know it, should know it, or has been given notification of it." *Vernon D. Cox & Co. v. Giles,* 267 Pa.Super. 411, 406 A.2d 1107, 1110 (Pa.Super.Ct.1979). The pivotal question in the present case, therefore, is whether GCD Construction, Inc. was a disclosed principle in the dealings between the Claimants and Mr. Deimler.

There is no doubt that Mr. Deimler was acting as an agent for GCD Construction, Inc. as a disclosed principle, and is thus not personally liable on the Contract to the Claimants under applicable agency law. This is so because the language of the signature block unambiguously attributes the trade name "Deimler Family Construction" to GCD Construction, Inc. Moreover, the words "Company Representative" immediately precede the signature line bearing Mr. Deimler's signature in the portion of the signature block labeled "Contractor's Acceptance." Furthermore, it is not disputed that every single page of the first eleven pages of the contract includes GCD Construction, Inc.'s name and address at the bottom left hand corner and that the Claimant Cynthia Kramer initialed each of those pages. Finally, it is a given that Mr. Deimler did not specifically agree to assume liability under the Contract by signing a formal guarantee. Response 2 ¶¶ 8-9, ECF No. 62. These facts unequivocally establish that the Claimants had

17

actual knowledge at the time of the transaction that the Mr. Deimler was acting as an agent for GCD Construction, Inc. as a disclosed principle. Therefore, as a matter of Pennsylvania agency law, Mr. Deimler is not personally liable to the Claimants on the Contract.

## IV. Conclusion

The Court finds that the Claimants have not proven the validity of their Claim by a preponderance of the evidence. Specifically, the Claimants have failed to establish that Mr. Deimler is the Contractor under the Contract. This is so because the express language of the Contract unambiguously identifies the Contractor as GCD Construction, Inc., dba Deimler Family Construction, not Mr. Deimler individually. Further, the Claimants have failed to advance any other theory of law under which Mr. Deimler could be a party to the Contract. Because Mr. Deimler is not a party to the Contract, he cannot be liable to Claimants for the alleged breach of same. The Objection will therefore be sustained.

An appropriate Order will follow.

Dated: March 23, 2021    By the Court,

_Henry W. Van Eck_
Henry W. Van Eck, Chief Bankruptcy Judge <sup>(LS)</sup>

18

Case 1:20-bk-00841-HWV    Doc 167    Filed 03/23/21    Entered 03/23/21 16:51:21    Desc
Main Document    Page 18 of 18