**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| IN RE: | : | |
| **CRAIG BRADLEY DEIMLER** | : | **CASE NO. 1:20-bk-00841-HWV** |
| **WILLIAM OLIVER FISHER-DEIMLER** | : | |
| **a/k/a WILLIAM OLIVER FISHER DEIMLER** | : | **CHAPTER 13** |
| **f/k/a WILLIAM OLIVER FISHER** | : | |
| Debtors | : | |
| | : | |
| **CRAIG BRADLEY DEIMLER** | : | |
| **WILLIAM OLIVER FISHER-DEIMLER** | : | |
| **a/k/a WILLIAM OLIVER FISHER DEIMLER** | : | |
| **f/k/a WILLIAM OLIVER FISHER** | : | |
| Movants | : | |
| | : | |
| v. | : | |
| | : | |
| **JACK N. ZAHAROPOULOS, ESQUIRE,** | : | |
| **COMPASS BANK** | : | |
| Respondents | : | |

**CERTIFICATE OF SERVICE**

If service was made by personal service, by residence service or pursuant to state law, I further certify that I am, and at all times during the service of process was, not less than 18 years of age and not a party to the matter concerning which service of process was made.

I served a copy of the Order, Amended Motion to Sell Real Estate, Exhibit A, Affidavit and proposed Order on the following parties in this matter:

| Name and Address | Mode of Service |
|---|---|
| **Compass Bank**<br>**PO Box 11830**<br>**Birmingham, AL 35202** | **Certified Mail and Regular 1st Class Mail, Postage Prepaid**<br>**OFFICER, MANAGING OR GENERAL AGENT, OR ANY OTHER AGENT AUTHORIZED BY APPOINTMENT, OR BY LAW, TO RECEIVE SERVICE OF PROCESS** |
| **Compass Bank**<br>**541 Lawrence Road**<br>**Broomall, PA 19008-3599** | **Certified Mail and Regular 1st Class Mail, Postage Prepaid**<br>**OFFICER, MANAGING OR GENERAL AGENT, OR ANY OTHER AGENT AUTHORIZED BY APPOINTMENT, OR BY LAW, TO RECEIVE SERVICE OF PROCESS** |

| Allegheny County Tax Claim Bureau<br>436 Grant Street<br>Pittsburgh, PA 15219 | Certified Mail and Regular 1st Class Mail,<br>Postage Prepaid<br>OFFICER, MANAGING OR GENERAL AGENT,<br>OR ANY OTHER AGENT AUTHORIZED BY<br>APPOINTMENT, OR BY LAW, TO RECEIVE<br>SERVICE OF PROCESS |
|---|---|
| Jack N. Zaharopoulos, Esquire<br>Chapter 13 Trustee | Via E-Service |

I certify under penalty of perjury that the foregoing is true and correct.

Date: __10/05/2023__         Name: ___Gary J. Imblum, Esquire_____
                                                    **Printed Name of Attorney**

                                     Address: ___4615 Derry Street_____
                                                       ___Harrisburg, PA 17111_____

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re:

Craig Bradley Deimler,

**Debtor 1**

William Oliver Fisher−Deimler,
aka William Oliver Fisher Deimler, fka William Oliver Fisher,

**Debtor 2**

Chapter: 13

Case number: 1:20−bk−00841−HWV

Document Number: 350

Matter: Amended Motion for Sale Free and Clear of Liens

Craig Bradley Deimler, William Oliver Fisher−Deimler, aka William Oliver Fisher Deimler, fka William Oliver Fisher,
**Movant(s)**

vs.

Jack N. Zaharopoulos, Esquire, Allegheny Couty Tax Claim Bur.
Compass Bank
**Respondent(s)**

### Order

Unless earlier served through CM/ECF, **IT IS ORDERED** that service of this Order and the above−referenced Motion shall be made by the moving party on all respondent(s) named in the Motion claiming an interest in the property, counsel, and in a Chapter 11 case service shall also be made upon the Trustee, if any, U.S. Trustee and the individuals identified in F.R.B.P. 4001(a)(1) and L.B.R 4001−6. Service shall be made within seven (7) days from the date hereof and certification of service filed with this Court within fourteen (14) days from the date hereof.

**IT IS FURTHER ORDERED** that answers to the Motion must be served on the moving party and a copy filed with this Court, within fourteen (14) days from the service date of this Order. If no Response is filed, relief may be granted. A hearing will be held if a responsive pleading is timely filed, requested by the moving party, or ordered by the Court. If a default order has not been signed and entered, the parties or their counsel are required to appear in Court at the hearing on the below date and time.

| | |
|---|---|
| United States Bankruptcy Court
Sylvia H. Rambo US Courthouse, Bankruptcy Courtroom No. 8 (4th Floor), 1501 N. 6th St, Harrisburg, PA 17102 | Date: 11/7/23

Time: 09:30 AM |

By the Court,

Henry W. Van Eck, Chief Bankruptcy Judge

Dated: October 5, 2023

Initial requests for a continuance of hearing ( *L.B.F. 9013–4, Request to Continue Hearing/Trial with Concurrence)* shall be filed with the Court. Requests received by the Court within twenty–four (24) hours of the hearing will not be considered except in emergency situations. Additional requests for continuance must be filed as a Motion.

Requests to participate in a hearing remotely shall be made in accordance with L.B.R. 9074–1.

Electronic equipment, including cell phones, pagers, laptops, etc., will be inspected upon entering the Courthouse. These devices may be used in common areas and should be turned to silent operation upon entering the Courtroom and Chambers.

Photo identification is required upon entering the Courthouse.

orreshrg(5/18)

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
**CRAIG BRADLEY DEIMLER** : **CASE NO. 1:20-bk-00841-HWV**
**WILLIAM OLIVER FISHER-DEIMLER** :
**a/k/a WILLIAM OLIVER FISHER DEIMLER** : **CHAPTER 13**
**f/k/a WILLIAM OLIVER FISHER** :
    **Debtors** :
    :
**CRAIG BRADLEY DEIMLER** :
**WILLIAM OLIVER FISHER-DEIMLER** :
**a/k/a WILLIAM OLIVER FISHER DEIMLER** :
**f/k/a WILLIAM OLIVER FISHER** :
    **Movants** :
    :
v. :
    :
**JACK N. ZAHAROPOULOS, ESQUIRE,** :
**ALLEGHENY COUNTY TAX CLAIM BUR.** :
**COMPASS BANK** :
    **Respondents** :

## AMENDED MOTION TO SELL REAL ESTATE FREE AND CLEAR OF LIENS RE: 114 LINCOLN AVENUE PROPERTY

**AND NOW,** come Debtors, Craig Bradley Deimler and William Oliver Fisher-Deimler, by and through their attorney, Gary J. Imblum, and pursuant to 11 U.S.C. § 363(f)(3) and respectfully represent:

1.    Debtors filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on March 4, 2020.

2.    Debtors, Craig Bradley Fisher and William Oliver Fisher-Deimler, are the owners of real estate situate and known as 114 Lincoln Avenue, North Versailles, Allegheny County, Pennsylvania 15137.

3.    The real estate is presently listed with Keller Williams Realty. Realtor commission is in the amount of 6% plus $600.00.

4. Debtors have entered into an Agreement of Sale to sell said property for a total price of $175,000.00 to Nadine Lennon and Terry Lennon, non-relatives and non-insiders. The sale also includes a one (1) year warranty on the property. A copy of the Agreement of Sale is attached hereto as Exhibit "A" and is incorporated herein by reference.

5. To the best of Debtors knowledge, all the parties who have a lien on said property include, but are not limited to the following:

      a. Allegheny County Tax Claim Bureau, if any; and

      b. Compass Bank.

**WHEREFORE**, Debtors respectfully request that this Honorable Court issue an Order approving the sale of aforesaid real estate, free and clear of liens and the distribution of the proceeds as set forth below shall be permitted and that Federal Bankruptcy Rule 6004(g) is not applicable, and the real property may be sold and purchased immediately upon entry of Order of Court approving same:

1. Payment of all closing costs for which Debtors are liable.

2. Payment of attorneys fees in the amount of $3,500.00, to be applied to Debtors' costs and Attorney fees, billed on an hourly basis, and approved by the Bankruptcy Court.

3. Payment of any and all other miscellaneous fees involved with the sale.

4. Payment of any liens and mortgages.

5. As long as same is a valid lien on subject real estate, payment in full of Allegheny County Tax Claim Bureau, if any, or else the sale will not occur.

6. As long as same is a valid lien on subject real estate, payment in full of Compass mortgage, or else the sale will not occur.

7.     If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then payment to the Debtors up to the total amount of the exemption in subject real estate.  The total exemption pursuant to Debtors' Schedules is $15,000.00.

8.     If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then payment to Trustee Jack N. Zaharopoulos in an amount up to the amount necessary to fully fund the Plan, less any amount otherwise payable to a secured creditor pursuant to Debtors' Plan, which is, in fact, paid at settlement.

9.     If there are net proceeds remaining after paying all of the costs, fees and liens set forth in the preceding paragraphs, then payment of any and all attorney fees owed to Debtors' counsel for representation in  the above matter and which have been previously approved by the Court.

10.     If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then the remaining balance, if any, shall be distributed to the Debtors.

Respectfully submitted,

Gary J. Imblum, Esquire
Attorney Id. No. 42606
4615 Derry Street
Harrisburg, PA  17111
(717) 238-5250
Fax No. (717) 558-8990
gary.imblum@ imblumlaw.com
Attorney for Debtors

Dated:  10/04/2023

dotloop signature verification: dtlp.us/qaUa-jLtR-rTHt

Authentisign ID: 52D62C7B-FA2D-49E9-90DF-94E81C05640E



# STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE

**ASR**

This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

## PARTIES

**BUYER(S):** Nadine  Lennon, Terry  Lennon

**SELLER(S):** Craig Deimler, Wiliam Fisher Deimler

**BUYER'S MAILING ADDRESS:**

**SELLER'S MAILING ADDRESS:**

## PROPERTY

ADDRESS (including postal city) **114 Lincoln Ave**

**N Versailles**   ZIP **15137**,

in the municipality of **North Versailles**, County of **Allegheny-East**,

in the School District of **East Allegheny**, in the Commonwealth of Pennsylvania.

Tax ID #(s): and/or

Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date): **0458-M-00067-0000-00**

## BUYER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Buyer is not represented by a broker)**

Broker (Company) **Coldwwell Banker Realty**

Company License # **RB067335**

Company Address **201 S Highland Ave, Ste 301, Pittsburgh, PA 15206**

Company Phone **(412)363-4000**

Company Fax **(412)363-7551**

Broker is (check only one):

[X]   Buyer Agent (Broker represents Buyer only)

☐   Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) **Starr Smith**

State License # **RS350240**

Direct Phone(s) **(412)401-0277**

Cell Phone(s) **(412)401-0277**

Email **Starr.Smith@pittsburghmoves.com**

Licensee(s) is (check only one):

[X]   Buyer Agent (all company licensees represent Buyer)

☐   Buyer Agent with Designated Agency (only Licensee(s) named above represent Buyer)

☐   Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

## SELLER'S RELATIONSHIP WITH PA LICENSED BROKER

☐ **No Business Relationship (Seller is not represented by a broker)**

Broker (Company) **KELLER WILLIAMS REALTY**

Company License # **RB062373P**

Company Address **10749 Route 30, Irwin, PA  15642**

Company Phone **(724)861-0500**

Company Fax **(724)861-0504**

Broker is (check only one):

[X]   Seller Agent (Broker represents Seller only)

☐   Dual Agent (See Dual and/or Designated Agent box below)

Licensee(s) (Name) **Melissa Merriman**

State License # **AB069128**

Direct Phone(s) **(412)610-4188**

Cell Phone(s)

Email **Melmerriman1@gmail.com**

Licensee(s) is (check only one):

[X]   Seller Agent (all company licensees represent Seller)

☐   Seller Agent with Designated Agency (only Licensee(s) named above represent Seller)

☐   Dual Agent (See Dual and/or Designated Agent box below)

☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

## DUAL AND/OR DESIGNATED AGENCY

A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

**By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.**

Buyer Initials: NL TL      ASR Page 1 of 14      Seller Initials: CBD WFD

10/02/23   10/02/23

8:14 PM EDT   8:46 PM EDT
dotloop verified

**COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2023**
rev. 9/22; rel. 1/23

Coldwell Banker Realty - Shadyside, 201 S Highland Ave Suite 301 Pittsburgh PA 15206      Phone: (412)401-0277      Fax: (412)363-5554      Nadine & Terry
Starr Smith      Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX  75201   www.lwolf.com

Case 1:20-bk-00841-HWV   Doc 352   Filed 10/05/23   Entered 10/05/23 10:33:37   Desc
Main Document   Page 8 of 25

1. **By this Agreement**, dated **October 2, 2023**
   Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

2. **PURCHASE PRICE AND DEPOSITS (4-14)**
   (A) Purchase Price $ ~~169,000.00~~ **175,000**
   (**One Hundred Sixty-Nine Thousand** U.S. Dollars), to be paid by Buyer as follows:

   1. Initial Deposit, within _____ days (5 if not specified) of Execution Date, if not included with this Agreement: $ **1,000.00**
   2. Additional Deposit within _____ days of the Execution Date: $ _____
   3. _____ $ _____
      Remaining balance will be paid at settlement.

   (B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.

   (C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: **Broker for Buyer**), who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

3. **SELLER ASSIST (If Applicable) (1-10)**
   Seller will pay $ _____ or **3.000** % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

4. **SETTLEMENT AND POSSESSION (1-23)**
   (A) Settlement Date is **November 3, 2023** , or before if Buyer and Seller agree.
   (B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
   (C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____

   (D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
   1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
   2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.

   (E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
   (F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
   (G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
   (H) If Seller has identified in writing that the Property is subject to a lease or short-term rental agreement, possession is to be delivered by deed, existing keys and assignment of existing leases and short-term rental agreements for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases or short-term rental agreements, nor extend existing leases or short-term rental agreements, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) or short-term rental agreement(s) by initialing the lease(s) or short-term rental agreement(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
   ☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.

5. **DATES/TIME IS OF THE ESSENCE (1-10)**
   (A) Written acceptance of all parties will be on or before: **October 3, 2023**
   (B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
   (C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**
   (D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.
   (E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

dotloop signature verification: dtlp.us/qaUa-jLtR-rTHt

Authentisign ID: 52D62C7B-FA2D-49E9-90DF-94E81C05640E

**6. ZONING (4-14)**

Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdividable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.

**Zoning Classification, as set forth in the local zoning ordinance:** _____

**7. FIXTURES AND PERSONAL PROPERTY (1-20)**

(A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating what items will be included or excluded in this sale.

(B) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: **Auto Door on Garage, Dishwasher, Gas Stove, Kitchen Island, Refrigerator, Washer/Dryer, Window Treatments, hot tub**

(C) The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____
_____

(D) EXCLUDED fixtures and items: _____
_____

**8. BUYER FINANCING (8-22)**

(A) Buyer may elect to make this Agreement contingent upon obtaining mortgage financing. Regardless of **any** contingency elected in this Agreement, if Buyer chooses to obtain mortgage financing, the following apply:

1. **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated below, or otherwise causes the lender to reject, or refuse to approve or issue, a mortgage loan.

2. Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(F), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the mortgage lender(s) at any time to determine the status of the mortgage loan application.

3. Seller will provide access to insurers' representatives and, as may be required by the mortgage lender(s), to surveyors, municipal officials, appraisers, and inspectors.

4. If the mortgage lender(s) gives Buyer the right to lock in interest rate(s) at or below the maximum levels desired, Buyer will do so at least _15_ DAYS before Settlement Date.

(B) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the Property.

**FHA/VA, IF APPLICABLE**

(C) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than ~~$169,000.00~~ 175,000 (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.

**Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201 www.lwolf.com

Nadine & Terry  10/02/23  10/02/23
8:46 PM EDT  8:46 PM EDT
dotloop verified dotloop verified

(D) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgment**

[X] Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.

[ ] Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(F)) and Buyer's acceptance of additional required repairs as required by the lender.

(E) **Certification** We the undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached to this Agreement.

(F) **Mortgage Contingency**

[ ] WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency. Buyer and Seller understand that the waiver of this contingency does not restrict Buyer's right to obtain mortgage financing for the Property.

[X] ELECTED. This sale is contingent upon Buyer obtaining mortgage financing according to the terms outlined below. Upon receiving documentation demonstrating the mortgage lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the following terms, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than _____ (Commitment Date).

| **First Mortgage on the Property** | **Second Mortgage on the Property** |
|---|---|
| Loan Amount $ ~~169,000.00~~ 175,000 | Loan Amount $ _____ |
| Minimum Term **30** years | Minimum Term _____ years |
| Type of mortgage **VA** | Type of mortgage _____ |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender **Mid Continent Funding Inc** | Mortgage lender _____ |
| Interest rate **6.500** %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of **7.000** %. | Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed **100.000** % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

1. The interest rate(s) and fee(s) provisions in Paragraph 8(F) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage lender(s) to make above mortgage term(s) available to Buyer.

2. Seller may terminate this Agreement after the Commitment Date by written notice to Buyer if:
   a. Seller does not receive a copy of the documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage application(s) by the Commitment Date,
   b. The documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage application(s) does not satisfy the loan terms outlined in Paragraph 8(F), OR
   c. The documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage application(s) contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within ____7____ DAYS after the Commitment Date, or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).

3. Seller's right to terminate continues until Buyer delivers documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing. Termination of this Agreement by Buyer due to the mortgage lender's denial of Buyer's mortgage application(s) may demonstrate bad faith by Buyer and result in the forfeiture of deposit monies to Seller.

4. If this Agreement is terminated pursuant to Paragraphs 8(F)(2), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Buyer will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).

5. If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within ____5____ DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.
   a. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.

Buyer Initials: [NL] [JL]    ASR Page 4 of 14    Seller Initials [CBD] [WPD]

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Nadine &

Case 1:20-bk-00841-HWV    Doc 352    Filed 10/05/23    Entered 10/05/23 10:33:37    Desc
Main Document    Page 11 of 25

dotloop signature verification: dtlp.us/qaUa-jLtR-rTHt
Authentisign ID: 52D62C7B-FA2D-49E9-90DF-94E81C05640E

b. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will, within _____5_____ DAYS, notify Seller of Buyer's choice to:

1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR

2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.

**If Buyer fails to respond** within the time stated above or fails to terminate this Agreement by written notice to Seller within that time, **Buyer will accept the Property,** make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 28 of this Agreement.

**9. CHANGE IN BUYER'S FINANCIAL STATUS (9-18)**

If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer having incurred a new financial obligation; entry of a judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.**

**10. SELLER REPRESENTATIONS (1-20)**

(A) **Status of Water**

Seller represents that the Property is served by:

[X] Public Water   [ ] Community Water   [ ] On-site Water   [ ] None   [ ] _____

(B) **Status of Sewer**

1. Seller represents that the Property is served by:

[X] Public Sewer   [ ] Community Sewage Disposal System   [ ] Ten-Acre Permit Exemption (see Sewage Notice 2)
[ ] Individual On-lot Sewage Disposal System (see Sewage Notice 1)   [ ] Holding Tank (see Sewage Notice 3)
[ ] Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 4, if applicable)
[ ] None (see Sewage Notice 1)   [ ] None Available/Permit Limitations in Effect (see Sewage Notice 5)
_____

2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**

**Notice 1: There is no currently existing community sewage system available for the subject property.** Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.

**Notice 2: This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act.** (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.

**Notice 3: This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site.** Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.

**Notice 4: An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation.** The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.

**Notice 5: This lot is within an area in which permit limitations are in effect and is subject to those limitations.** Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

(C) **Historic Preservation**

Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____
_____

(D) **Land Use Restrictions**

1. [ ] Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):

[ ] Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)

[ ] Farmland and Forest Land Assessment Act (Clean and Green Program; Act 319 of 1974; 72 P.S. § 5490.1 et seq.)

Buyer Initials: _NL_ _JL_                    **ASR Page 5 of 14**                    Seller Initials: _CBD_ _WPD_

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

Nadine & Terri   10/02/23   10/02/23
                 8:46 PM EDT  8:46 PM EDT
                 dotloop verified  dotloop verified

Case 1:20-bk-00841-HWV   Doc 352   Filed 10/05/23   Entered 10/05/23 10:33:37   Desc
Main Document   Page 12 of 25

258     ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)

259     ☐ Conservation Reserve Program (16 U.S.C. § 3831 et seq.)

260     ☐ Other

261   2. **Notices Regarding Land Use Restrictions**

262     a. **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations

263     take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits

264     circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.

265     b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assess-

266     ment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution

267     of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that

268     may result in the future as a result of any change in use of the Property or the land from which it is being separated.

269     c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water

270     supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open

271     space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that

272     the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific

273     termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply

274     from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the

275     Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.

276     d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are

277     environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the

278     land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer

279     has been advised of the need to determine the restrictions on development of the Property and the term of any contract now

280     in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

281 (E) **Real Estate Seller Disclosure Law**

282     Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real

283     estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential

284     real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of

285     an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING**

286     **UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures

287     regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale

288     of condominium and cooperative interests.

289 (F) **Public and/or Private Assessments**

290   1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner asso-

291     ciation assessments have been made against the Property which remain unpaid, and that no notice by any government or public

292     authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to

293     violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition

294     that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____

295     _____

296   2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____

297     _____

298 (G) **Highway Occupancy Permit**

299     Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

300 (H) **Internet of Things (IoT) Devices**

301   1. The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data

302     stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things

303     (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.

304   2. On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property

305     and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to

306     cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be

307     disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or

308     anyone on Seller's behalf to access any IoT devices remaining on the Property.

309   3. Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the

310     Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously

311     provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes,

312     updating network settings and submitting change of ownership and contact information to device manufacturers and service

313     providers.

314   4. This paragraph will survive settlement.

315 **11. WAIVER OF CONTINGENCIES (9-05)**

316     If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental condi-

317     tions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exer-**

318     **cise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts**

319     **the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

320 **Buyer Initials:** _NL_ _JL_          **ASR Page 6 of 14**          **Seller Initial** _CBD_ _WPD_

dotloop signature verification: dtlp.us/qaUa-jLtR-rTHt

Authentisign ID: 52D62C7B-FA2D-49E9-90DF-94E81C05640E

321 **12. BUYER'S DUE DILIGENCE/INSPECTIONS (1-23)**

322     (A) **Rights and Responsibilities**

323         1.   Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to
324            surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate
325            licensee(s) may attend any inspections.

326         2.   Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the
327            condition of the Property as required by this Agreement and any addenda. Buyer's right to these inspections is not waived
328            by any other provision of this Agreement.

329         3.   **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**

330         4.   All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for
331            Buyer.

332         5.   Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared.
333            Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

334     (B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as
335       "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly
336       licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same
337       inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D)
338       for Notices Regarding Property and Environmental Inspections)

339     (C) For elected Inspection(s), Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any
340       Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit
341       a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

342               **Home/Property Inspections and Environmental Hazards (mold, etc.)**

343     **Elected**     Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior   
344     ————     doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances;
345             electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetra-
346             tion; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environ
347             mental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer
348             may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the
349             home inspection must be performed by a full member in good standing of a national home inspection association,
350             or a person supervised by a full member of a national home inspection association, in accordance with the ethical
351             standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or
352             architect. (See Notices Regarding Property & Environmental Inspections)

353               **Wood Infestation**

354      Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a   **Waived**
355             wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided   ————
356             by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mort-
357             gage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be
358             limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection
359             reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesti-
360             cide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer
361             may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to
362             structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property.

363               **Deeds, Restrictions and Zoning**

364     **Elected**     Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordi-   
365     ————     nances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the
366             Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking,
367             short-term rentals) is permitted and may elect to make the Agreement contingent upon an anticipated use. Present
368             use: _____

369               **Water Service**

370     **Elected**     Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise   
371     ————     qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will
372             locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous
373             condition, at Seller's expense, prior to settlement.

374               **Radon**

375     **Elected**     Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection   
376     ————     Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02
377             working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground
378             by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can
379             increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a
380             house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any
381             person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department
382             of Environmental Protection. Information about radon and about certified testing or mitigation firms is available
383             through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State
384             Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov

385   **Buyer Initials:** _NL JL_                  **ASR Page 7 of 14**                 **Seller Initials:** _CBD WFD_

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com

10/02/23      10/02/23
Nadine & Terry      PM EDT    8:46 PM EDT
dotloop verified      dotloop verified dotloop verified

dotloop signature verification: dtlp.us/qaUa-jLtR-rTHt

Authentisign ID: 52D62C7B-FA2D-49E9-90DF-94E81C05640E

**On-lot Sewage (If Applicable)**

386
387 **Elected** Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic
388 load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's
389 expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water
390 needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense,
391 prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-lot Sewage Inspection
392 Contingency.

393 **Property and Flood Insurance**
394 **Elected** Buyer may determine the insurability of the Property by making application for property and casualty insurance
395 for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate
396 with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone,
397 Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more
398 prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood
399 insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more
400 flood insurance agents regarding the need for flood insurance and possible premium increases.

401 **Property Boundaries**
402 **Elected** Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal
403 description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property
404 surveyed as it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural
405 or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical represen-
406 tations of size of property are approximations only and may be inaccurate.

407 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**
408 **Elected** Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct
409 a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint
410 hazards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard**
411 **Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved**
412 **lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a**
413 **separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any**
414 **lead-based paint records regarding the Property.**

415 **Other**
416 **Elected** <u>Camera Test for Sewer Lines</u>
417

418 The Inspections elected above do not apply to the following existing conditions and/or items:
419
420

421 (D) **Notices Regarding Property & Environmental Inspections**
422     1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating
423         the surface of a structure where it may cause mold and damage to the building's frame.
424     2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
425     3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal
426         of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's respon-
427         sibility to dispose of them properly.
428     4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer
429         to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop
430         the property would be affected or denied because of its location in a wetlands area.
431     5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores,
432         pollen and viruses) have been associated with allergic responses.
433     6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be
434         directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C.
435         20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health,
436         Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health
437         and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by
438         calling 1-877-724-3258.

439 **13. INSPECTION CONTINGENCY (10-18)**
440     (A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected
441         in Paragraph 12(C).
442     (B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in
443         Paragraph 13(C):
444         1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in**
445           **their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in**
446           **Paragraph 28 of this Agreement,** OR
447         2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
448           **their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer
449           according to the terms of Paragraph 26 of this Agreement, OR

450 **Buyer Initials:** ___ ___       **ASR Page 8 of 14**       **Seller Initials:** ___ ___

Case 1:20-bk-00841-HWV    Doc 352    Filed 10/05/23    Entered 10/05/23 10:33:37    Desc
Main Document    Page 15 of 25

451 3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in**
452 **their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by**
453 **Buyer.**
454 The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform
455 the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of
456 the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or
457 governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
458 a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation
459 Period. During the Negotiation Period:
460 (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
461 (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improve-
462 ments to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
463 If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable
464 written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the
465 Negotiation Period ends.
466 b. If no mutually acceptable written agreement is reached, or if Seller fails to respond during the Negotiation Period, within
467 _____ days (2 if not specified) **following the end of the Negotiation Period,** Buyer will:
468 (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this
469 Agreement, OR
470 (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
471 of Paragraph 26 of this Agreement.
472 **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement**
473 **by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree**
474 **to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation**
475 **Period.**
476 (C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____
477 days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to,
478 the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected
479 completion date for corrective measures. Within ___5___ DAYS of receiving Seller's Proposal, or **if no Proposal is provided within**
480 **the stated time,** Buyer will notify Seller in writing of Buyer's choice to:
481 1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
482 2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
483 Paragraph 26 of this Agreement, OR
484 3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by
485 any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time
486 required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the
487 Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct
488 the defects, Buyer may, within ___5___ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all
489 deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
490 **If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to
491 Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
492 **14. TITLES, SURVEYS AND COSTS (6-20)**
493 (A) Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company
494 for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report
495 to Seller.
496 (B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different
497 from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance
498 policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options.**
499 Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an
500 owner's title insurance policy.
501 (C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation;
502 (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees
503 and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
504 (D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal descrip-
505 tion of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or
506 required by the mortgage lender will be obtained and paid for by Buyer.
507 (E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the reg-
508 ular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions;
509 historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the
510 ground; easements of record; and privileges or rights of public service companies, if any.
511 (F) If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or
512 any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to,
513 Seller filing bankruptcy; filing of a foreclosure lawsuit against the Property; entry of a monetary judgment against Seller; notice
514 of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all
515 liens and encumbrances against the Property.

516 **Buyer Initials:** NL JL      **ASR Page 9 of 14**      **Seller Initials:** CBD WPD

517   (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates,
518      as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned
519      to Buyer according to the terms of Paragraph 26 of this Agreement, or take such title as Seller can convey. If the title condition
520      precludes Seller from conveying title, Buyer's sole remedy shall be to terminate this Agreement. Upon termination, all deposit
521      monies shall be returned to Buyer according to the terms of Paragraph 26 of this Agreement and Seller will reimburse Buyer for
522      any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those
523      items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).

524   (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
525      about the status of those rights unless indicated elsewhere in this Agreement.
526      **[X] Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**

527   (I) **COAL NOTICE (Where Applicable)**
528      THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-
529      NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-
530      PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND
531      ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of
532      the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence
533      resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-
534      ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose
535      of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27,
536      1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.

537   (J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here:
538      _____

539   (K) 1.  This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here: _____
540         [ ] **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**
541       2. **Notices Regarding Private Transfer Fees:** In Pennsylvania, Private Transfer Fees are defined and regulated in the Private
542         Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that
543         is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-
544         gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of
545         whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or
546         other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must
547         disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed,
548         the Act gives certain rights and protections to buyers.

549 **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**
550   (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
551      received after Seller has signed this Agreement and before settlement, Seller will within   5   DAYS of receiving the notices and/
552      or assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
553      1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
554        notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
555      2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails**
556        **within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within   5   DAYS
557        that Buyer will:
558        a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
559          Paragraph 28 of this Agreement, OR
560        b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
561          of Paragraph 26 of this Agreement.
562      **If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) **or fails to terminate** this Agreement by written notice
563      to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

564   (B) If required by law, within   30   DAYS from the Execution Date of this Agreement, but in no case later than   15   DAYS prior to
565      Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department(s) disclosing notice
566      of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of
567      the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to
568      Seller.
569      1. Within   5   DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a
570        copy of the notice to Buyer and notify Buyer in writing that Seller will:
571        a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/
572          improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
573        b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
574          notify Seller in writing within   5   DAYS that Buyer will:
575          (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph
576            28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
577          (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
578            of Paragraph 26 of this Agreement.
579        **If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate** this Agreement by writ-
580        ten notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this

581 **Buyer Initials:** _NL_ _JL_          **ASR Page 10 of 14**          **Seller Initials** _CBD_ _WFD_

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com    Nadine &
10/02/23    10/02/23
8:46:17 PM EDT   8:46 PM EDT
dotloop verified   dotloop verified

Case 1:20-bk-00841-HWV    Doc 352    Filed 10/05/23    Entered 10/05/23 10:33:37    Desc
Main Document    Page 17 of 25

dotloop signature verification: dtlp.us/qaUa-jLtR-rTHt

Authentisign ID: 52D62C7B-FA2D-49E3-90DF-94E81C05640E

582    Agreement, and **Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the
583    notice provided by the municipality.
584   2. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph,
585    Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(2) will survive**
586    **settlement.**

**16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**

587

588 (A) Property is NOT a Condominium or part of a Planned Community unless checked below.

589   ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407
590    of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of
591    the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.

592   ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
593    the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the decla-
594    ration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the
595    provisions set forth in Section 5407(a) of the Act.

596 (B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM**
597   **OR A PLANNED COMMUNITY:**
598   If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
599   Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
600   this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
601   Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
602   Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.

603 (C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A**
604   **PLANNED COMMUNITY:**
605   1. Within  15  DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
606    a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
607    that the association is required to provide these documents within 10 days of Seller's request.
608   2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
609    for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
610    association in the Certificate.
611   3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents
612    and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon
613    Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of
614    this Agreement.
615   4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
616    reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
617    Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee
618    for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation;
619    (3) Appraisal fees and charges paid in advance to mortgage lender.

**17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**

620

621 In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-
622 erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for
623 the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of
624 the property and result in a change in property tax.

**18. MAINTENANCE AND RISK OF LOSS (1-14)**

625

626 (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property)
627   specifically listed in this Agreement in its present condition, normal wear and tear excepted.
628 (B) If any part of the Property included in the sale fails before settlement, Seller will:
629   1. Repair or replace that part of the Property before settlement, OR
630   2. Provide prompt written notice to Buyer of Seller's decision to:
631    a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
632     if any, OR
633    b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
634     part of the Property.
635   3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller**
636    **fails to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within  5  DAYS or before Settlement Date,
637    whichever is earlier, that Buyer will:
638    a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
639    b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
640     Paragraph 26 of this Agreement.
641    **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) **or fails to terminate** this Agreement by written notice
642    to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
643 (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
644   replaced prior to settlement, Buyer will:

645 **Buyer Initials:** _NL_ _TL_     **ASR Page 11 of 14**     **Seller Initials** _GBD_ _WPD_

Nadine & Terry
10/02/23   10/02/23
8:41 PM EDT   8:46 PM EDT
dotloop verified   dotloop verified

Case 1:20-bk-00841-HWV Doc 352 Filed 10/05/23 Entered 10/05/23 10:33:37 Desc
Main Document Page 18 of 25

646         1.   Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR

647         2.   Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of

648            Paragraph 26 of this Agreement.

**19. HOME WARRANTIES (1-10)**

At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.

**20. RECORDING (9-05)**

This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.

**21. ASSIGNMENT (1-10)**

This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assignable, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.

**22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**

(A)   The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the laws of the Commonwealth of Pennsylvania.

(B)   The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of Pennsylvania.

**23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**

The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S. real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons purchasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S. taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to withhold, you may be held liable for the tax.

**24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**

The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular property, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.

**25. REPRESENTATIONS (1-10)**

(A)   All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licensees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement. This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants, representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not be altered, amended, changed or modified except in writing executed by the parties.

(B)   Unless otherwise stated in this Agreement, **Buyer has inspected the Property** (including fixtures and any personal property specifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property IN ITS PRESENT CONDITION**, subject to inspection contingencies elected in this Agreement. Buyer acknowledges that Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems contained therein.

(C)   Any repairs required by this Agreement will be completed in a workmanlike manner.

(D)   Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.

**26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**

(A)   Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID. Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.

(B)   Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:

1.   If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written agreement signed by both parties is evidence that there is no dispute regarding deposit monies.

2.   If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing Broker how to distribute some or all of the deposit monies.

3.   According to the terms of a final order of court.

4.   According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

Case 1:20-bk-00841-HWV    Doc 352    Filed 10/05/23    Entered 10/05/23 10:33:37    Desc

Main Document     Page 19 of 25

711 (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved **30** days (180 if not
712 specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
713 Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
714 request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the
715 subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of
716 Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement
717 between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of
718 the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution
719 of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties
720 maintain their legal rights to pursue litigation even after a distribution is made.
721 (D) Buyer and Seller agree that a Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
722 law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
723 monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
724 (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
725     1. Fail to make any additional payments as specified in Paragraph 2, OR
726     2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning
727        Buyer's legal or financial status, OR
728     3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
729 (F) **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
730     1. On account of purchase price, OR
731     2. As monies to be applied to Seller's damages, OR
732     3. As liquidated damages for such default.
733 (G) [X] **SELLER IS LIMITED TO RETAINING THOSE SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS**
734 **LIQUIDATED DAMAGES.**
735 (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
736 and Seller are released from further liability or obligation and this Agreement is VOID.
737 (I) Brokers and licensees are not responsible for unpaid deposits.
738 **27. MEDIATION (7-20)**
739 Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
740 to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
741 Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation
742 system offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be
743 divided equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the
744 completion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens
745 by Buyer to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all
746 proceedings shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to
747 the prevailing party should the court find that a party has unreasonably breached this provision or acted in bad faith. Any agreement
748 reached through mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this
749 Agreement will survive settlement.
750 **28. RELEASE (9-05)**
751 **Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any**
752 **OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or**
753 **through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and
754 all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects,
755 radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage
756 disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in
757 default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer
758 of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.
759 **29. REAL ESTATE RECOVERY FUND (4-18)**
760 A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
761 estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
762 unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
763 3658.
764 **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
765 (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
766 and Closing Disclosure(s) upon receipt.
767 (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
768 satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant**
769 **to Paragraph 16.** If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
770 directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or
771 allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if
772 any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the
773 Seller, unless otherwise agreed to by the parties.

774 **Buyer Initials:** _NL_ _JL_      **ASR Page 13 of 14**      **Seller Initials:** _CBD_ _WFD_

Case 1:20-bk-00841-HWV    Doc 352    Filed 10/05/23    Entered 10/05/23 10:33:37    Desc
Main Document    Page 20 of 25

dotloop signature verification: dtlp.us/qaUa-jLtR-rTHt

Authentisign ID: 52D62C7B-FA2D-49E9-90DF-94E81C05640E

**31. HEADINGS (4-14)**

The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.

**32. SPECIAL CLAUSES (1-10)**

(A) **The following are attached to and made part of this Agreement if checked:**

- ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
- ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
- ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
- ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
- ☐ Appraisal Contingency Addendum (PAR Form ACA)
- ☐ Short Sale Addendum (PAR Form SHS)
- ☐ **Coldwell Banker client acknowledges receipt of the Customers for Life booklet.**
- ☒ **Seller agrees to provide a 1 year home warranty**
- ☒ **Price Escalation Addendum**

(B) **Additional Terms: Will only do pest inspection if, documentation provided by seller does not meet lender requirements**

Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.

**This Agreement may be executed in one or more counterparts,** each of which shall be deemed to be an original and which counterparts together shall constitute one and the same Agreement of the Parties.

**NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.

Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures of all parties, constitutes acceptance by the parties.

*NL TL* Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.

*NL TL* Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.

_____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money) before signing this Agreement.

*NL TL* Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).

**BUYER** *Nadine Lennon*  **DATE** 10/02/2023
Nadine Lennon

**BUYER** *Terry Lennon*  **DATE** 10/02/2023
Terry Lennon

**BUYER** _____  **DATE** _____

Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
Seller has received a statement of Seller's estimated closing costs before signing this Agreement.

**SELLER** *Craig B. Deimler*  **DATE** 10/02/2023
dotloop verified 10/02/23 8:14 PM EDT JRIU-LYH0-XG4S-BPWN

**SELLER** *William Fisher Deimler*  **DATE** 10/02/2023
dotloop verified 10/02/23 8:46 PM EDT RDOU-OE82-OE59-DZSL

**SELLER** _____  **DATE** _____

ASR Page 14 of 14

Produced with Lone Wolf Transactions (zipForm Edition) 717 N Harwood St, Suite 2200, Dallas, TX 75201   www.lwolf.com   Nadine & Terry

Case 1:20-bk-00841-HWV    Doc 352    Filed 10/05/23    Entered 10/05/23 10:33:37    Desc
Main Document    Page 21 of 25

# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: : 
CRAIG BRADLEY DEIMLER : CASE NO. 1:20-bk-00841-HWV
WILLIAM OLIVER FISHER-DEIMLER : 
a/k/a WILLIAM OLIVER FISHER DEIMLER : CHAPTER 13
f/k/a WILLIAM OLIVER FISHER : 
        Debtors :
: 
CRAIG BRADLEY DEIMLER : 
WILLIAM OLIVER FISHER-DEIMLER : 
a/k/a WILLIAM OLIVER FISHER DEIMLER : 
f/k/a WILLIAM OLIVER FISHER : 
        Movants :
: 
    v. : 
: 
JACK N. ZAHAROPOULOS, ESQUIRE, : 
ALLEGHENY COUNTY TAX CLAIM BUR. : 
COMPASS BANK : 
        Respondents :

## ABBOTTS DAIRIES AFFIDAVIT

Debtors' counsel, Gary J. Imblum, Esquire, inquired with the realtor, Traci Moffitt of Keller Williams Realty, and was informed of the following:

1. Subject property has been listed for sale since August 14, 2023.

2. The property was originally listed for $169,900.00.

3. There were no price adjustments made during the listing.

4. There were a total of 14 showings before the property went under contract. A Motion to Approve the Sale was filed with the Bankruptcy Court. The first buyers terminated, since they did not want to wait for the approval from the Bankruptcy Court before settling. The property was then relisted for $169,900.00.

5. There were a total of 7 offers on the property before the initial offer was accepted. The initial offer accepted fell through as stated above. After the property was relisted, there were

6 additional showings in 2 days. There were 2 offers after the property was relisted. The offer that was accepted had minimal contingencies. The offer that was rejected requested significant seller assist and the offer was lower than the offer that was accepted.

      6.      There is no connection between the proposed buyers, its owner and/or investors, and the Debtors.

Respectfully submitted,

Date: __10/4/13__

Gary J. Imblum, Esquire
Attorney Id. No. 42606
4615 Derry Street
Harrisburg, PA 17111
(717) 238-5250
Fax No. (717) 558-8990
gary.imblum@ imblumlaw.com
Attorney for Debtors

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| CRAIG BRADLEY DEIMLER | : | CASE NO. 1:20-bk-00841-HWV |
| WILLIAM OLIVER FISHER-DEIMLER | : | |
| a/k/a WILLIAM OLIVER FISHER DEIMLER | : | CHAPTER 13 |
| f/k/a WILLIAM OLIVER FISHER | : | |
| Debtors | : | |
| | : | |
| CRAIG BRADLEY DEIMLER | : | |
| WILLIAM OLIVER FISHER-DEIMLER | : | |
| a/k/a WILLIAM OLIVER FISHER DEIMLER | : | |
| f/k/a WILLIAM OLIVER FISHER | : | |
| Movants | : | |
| | : | |
| v. | : | |
| | : | |
| JACK N. ZAHAROPOULOS, ESQUIRE, | : | |
| ALLEGHENY COUNTY TAX CLAIM BUR. | : | |
| COMPASS BANK | : | |
| Respondents | : | |

## ORDER

**Upon consideration** of Debtor's Amended Motion to Sell Real Estate Free and Clear of Liens Re: 114 Lincoln Avenue property, and it appearing that no Objection or Answer was filed to the Motion by the time set forth in an Order, good reason appearing therefore, no objections appearing thereto, it is hereby declared that the Buyer (and/or its designee) is a good faith purchaser for purposes of Section 363(m) and (n) and for purposes of *In re Abbotts Dairies of Pennsylvania Inc.*, 788 F.2d 143 (3rd Cir. 1986);

**IT IS HEREBY ORDERED AND DECREED** that Federal Bankruptcy Rule 6004(g) is not applicable, and the real property may be sold and purchased immediately upon entry of Order of Court approving same and that the sale of real estate at 114 Lincoln Avenue, North Versailles, Allegheny County, Pennsylvania, free and clear of liens. The sale also includes a one (1) year

warranty on the property, to Nadine Lennon and Terry Lennon for $175,000.00 is approved and distribution of the proceeds as set forth below shall be permitted:

1.      Payment of all closing costs for which Debtors are liable.

2.      Payment of attorneys fees in the amount of $3,500.00, to be applied to Debtors' costs and Attorney fees, billed on an hourly basis, and approved by the Bankruptcy Court.

3.      Payment of any and all other miscellaneous fees involved with the sale.

4.      Payment of any liens and mortgages.

5.      As long as same is a valid lien on subject real estate, payment in full of Allegheny County Tax Claim Bureau, if any, or else the sale will not occur.

6.      As long as same is a valid lien on subject real estate, payment in full of Compass mortgage, or else the sale will not occur.

7.      If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then payment to the Debtors up to the total amount of the exemption in subject real estate.  The total exemption pursuant to Debtors' Schedules is $15,000.00.

8.      If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then payment to Trustee Jack N. Zaharopoulos in an amount up to the amount necessary to fully fund the Plan, less any amount otherwise payable to a secured creditor pursuant to Debtors' Plan, which is, in fact, paid at settlement.

9.      If there are net proceeds remaining after paying all of the costs, fees and liens set forth in the preceding paragraphs, then payment of any and all attorney fees owed to Debtors' counsel for representation in  the above matter and which have been previously approved by the Court.

10.     If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then the remaining balance, if any, shall be distributed to the Debtors.