# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| IN RE: | CASE NO: 1-20-00841-HWV |
|---|---|
| CRAIG BRADLEY DEIMLER<br>WILLIAM OLIVER FISHER-DEIMLER, aka William Oliver Fisher Deimler, fka Willliam Oliver Fisher | **DECLARATION OF MAILING**<br>**CERTIFICATE OF SERVICE**<br>Chapter: 13 |

On 2/21/2024, I did cause a copy of the following documents, described below,

Order setting response deadline & hearing date - Sale of Real Estate

to be served for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

I caused these documents to be served by utilizing the services of BK Attorney Services, LLC d/b/a certificateofservice.com, an Approved Bankruptcy Notice Provider authorized by the United States Courts Administrative Office, pursuant to Fed.R.Bankr.P. 9001(9) and 2002(g)(4). A copy of the declaration of service is attached hereto and incorporated as if fully set forth herein.

Parties who are participants in the Courts Electronic Noticing System ("NEF"), if any, were denoted as having been served electronically with the documents described herein per the ECF/PACER system.

DATED: 2/21/2024

/s/ Gary J. Imblum, Esquire
Gary J. Imblum, Esquire  42606
Attorney for Debtor
Imblum Law Offices, P.C.
4615 Derry St
Harrisburg, PA  17111
717 538 5250
carol.shay@imblumlaw.com

# UNITED STATES BANKRUPTCY COURT
# MIDDLE DISTRICT OF PENNSYLVANIA

| IN RE: | CASE NO: 1-20-00841-HWV |
|---|---|
| CRAIG BRADLEY DEIMLER<br>WILLIAM OLIVER FISHER-DEIMLER, aka<br>William Oliver Fisher Deimler, fka Wlilliam Oliver Fisher | **CERTIFICATE OF SERVICE**<br>**DECLARATION OF MAILING**<br>Chapter: 13 |

On 2/21/2024, a copy of the following documents, described below,

Order setting response deadline & hearing date - Sale of Real Estate

were deposited for delivery by the United States Postal Service, via First Class United States Mail, postage prepaid, with sufficient postage thereon to the parties listed on the mailing list exhibit, a copy of which is attached hereto and incorporated as if fully set forth herein.

The undersigned does hereby declare under penalty of perjury of the laws of the United States that I have served the above referenced document(s) on the mailing list attached hereto in the manner shown and prepared the Declaration of Certificate of Service and that it is true and correct to the best of my knowledge, information, and belief.

DATED: 2/21/2024



Jay S. Jump
BK Attorney Services, LLC
d/b/a certificateofservice.com, for
Gary J. Imblum, Esquire
Imblum Law Offices, P.C.
4615 Derry St
Harrisburg, PA  17111

# UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF PENNSYLVANIA

In re:

Craig Bradley Deimler,

**Debtor 1**

William Oliver Fisher−Deimler,
aka William Oliver Fisher Deimler, fka William Oliver Fisher,

**Debtor 2**

Chapter: 13

Case number: 1:20−bk−00841−HWV

Document Number: 396

Matter: Motion for Sale Free and Clear of Liens

Craig Bradley Deimler
William Oliver Fisher−Deimler a/k/a William Oliver Fisher Deimler f/k/a William Oliver Fisher
**Movant(s)**

vs.

PHFA, Dauphin County Commissioners, Dauphin County Tax Claim Bureau, City of Harrisburg, Capital Region Water, Jack N. Zaharopoulos, Trustee
**Respondent(s)**

### Order

   Unless earlier served through CM/ECF, **IT IS ORDERED** that service of this Order and the above−referenced Motion shall be made by the moving party on all respondent(s) named in the Motion claiming an interest in the property, counsel, and in a Chapter 11 case service shall also be made upon the Trustee, if any, U.S. Trustee and the individuals identified in F.R.B.P. 4001(a)(1) and L.B.R 4001−6. Service shall be made within seven (7) days from the date hereof and certification of service filed with this Court within fourteen (14) days from the date hereof.

   **IT IS FURTHER ORDERED** that answers to the Motion must be served on the moving party and a copy filed with this Court, within fourteen (14) days from the service date of this Order. If no Response is filed, relief may be granted. A hearing will be held if a responsive pleading is timely filed, requested by the moving party, or ordered by the Court. If a default order has not been signed and entered, the parties or their counsel are required to appear in Court at the hearing on the below date and time.

| United States Bankruptcy Court<br>Sylvia H. Rambo US Courthouse, Bankruptcy Courtroom 4B, 1501 N. 6th St, Harrisburg, PA 17102 | Date: 3/26/24<br><br>Time: 09:30 AM |
|---|---|

By the Court,

*Henry W. Van Eck*

Henry W. Van Eck, Chief Bankruptcy Judge

Dated: February 21, 2024

Initial requests for a continuance of hearing *( L.B.F. 9013−4, Request to Continue Hearing/Trial with Concurrence)* shall be filed with the Court. Requests received by the Court within twenty−four (24) hours of the hearing will not be considered except in emergency situations. Additional requests for continuance must be filed as a Motion.

Requests to participate in a hearing remotely shall be made in accordance with L.B.R. 9074−1.

Photo identification is required upon entering the Courthouse.

orreshrg(5/18)

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

IN RE: :
CRAIG BRADLEY DEIMLER : CASE NO. 1:20-bk-00841-HWV
WILLIAM OLIVER FISHER-DEIMLER :
a/k/a WILLIAM OLIVER FISHER DEIMLER : CHAPTER 13
f/k/a WILLIAM OLIVER FISHER :
                    Debtors :
                                                   :
CRAIG BRADLEY DEIMLER :
WILLIAM OLIVER FISHER-DEIMLER :
a/k/a WILLIAM OLIVER FISHER DEIMLER :
f/k/a WILLIAM OLIVER FISHER :
                    Movants :
                                                   :
        v.                                      :
                                                   :
PHFA :
DAUPHIN COUNTY COMMISSIONERS :
DAUPHIN COUNTY TAX CLAIM BUREAU :
CITY OF HARRISBURG :
CAPITAL REGION WATER :
JACK N. ZAHAROPOULOS, ESQUIRE :
                    Respondents :

MOTION TO SELL REAL ESTATE
FREE AND CLEAR OF LIENS
RE: 2428 MERCER STREET, HARRISBURG, PA

AND NOW, come Debtors, Craig Bradley Deimler and William Oliver Fisher-Deimler, by and through their attorney, Gary J. Imblum, and pursuant to 11 U.S.C. § 363(f) and respectfully represent:

1. Debtors filed a voluntary Petition under Chapter 13 of the Bankruptcy Code on March 4, 2020.

2. Debtors are the owners of real estate situate and known as 2428 Mercer Street, Harrisburg, Dauphin County, Pennsylvania.

3. The real estate is presently listed with Keller Williams of Central PA. Realtor commission is in the amount of 6% of the sale price or $3,000.00, whichever is greater, and $600.00. The employment of said realtor was approved by Order of Court dated November 3, 2023.

4. Debtors have entered into an Agreement of Sale to sell said property, including all fixtures present at the showing, for a total price of $135,000.00 to Ketty Guerrero, a non-relative and non-insider. A copy of the Agreement of Sale is attached hereto as Exhibit "A" and is incorporated herein by reference.

5. To the best of Debtors knowledge, all the parties who have a lien on said property include, but are not limited to the following:

    a. City of Harrisburg - municipal lien;
    b. Capital Region Water - water;
    c. Dauphin County Tax Claim Bureau - real estate taxes, if any;
    d. PHFA - first mortgage;
    e. Dauphin County Commissioners - second mortgage;

WHEREFORE, Debtors respectfully request that this Honorable Court issue an Order approving the sale of aforesaid real estate, free and clear of liens and the distribution of the proceeds as set forth below shall be permitted and that Federal Bankruptcy Rule 6004(h) is not applicable, and the real property may be sold and purchased immediately upon entry of Order of Court approving same:

1. Payment of all closing costs for which Debtors are liable.

2. Payment of attorneys fees in the amount of $3,500.00, to be applied to Debtors' costs and Attorney fees, billed on an hourly basis, and approved by the Bankruptcy Court.

3. Payment of any and all other miscellaneous fees involved with the sale.

4. Payment of any liens and mortgages.

5. As long as same is a valid lien on subject real estate, payment in full of Dauphin County Tax Claim Bureau real estate taxes, if any, or else the sale will not occur.

6. As long as same is a valid lien on subject real estate, payment in full of PHFA mortgage, or else the sale will not occur.

7. As long as same is a valid lien on subject real estate, payment in full of Dauphin County Commissioners mortgage, or else the sale will not occur.

8. If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then payment to Trustee Jack N. Zaharopoulos in an amount up to the amount necessary to fully fund the Plan, less any amount otherwise payable to a secured creditor pursuant to Debtors' Plan, which is, in fact, paid at settlement.

9. If there are net proceeds remaining after paying all of the costs, fees and liens set forth in the preceding paragraphs, then payment of any and all attorney fees owed to Debtors' counsel for representation in the above matter and which have been previously approved by the Court.

10. If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then the remaining balance, if any, shall be distributed to the Debtors.

Respectfully submitted,

_____
Gary J. Imblum
Attorney Id. No. 42606
4615 Derry Street, Harrisburg, PA 17111
(717) 238-5250; Fax No. (717) 558-8990
gary.imblum@imblumlaw.com
Attorney for Debtors

Dated: 2/21/2024

---

**STANDARD AGREEMENT FOR THE SALE OF REAL ESTATE**   ASR
This form recommended and approved for, but not restricted to use by, the members of the Pennsylvania Association of Realtors® (PAR).

**PARTIES**

BUYER(S): Ketty Guerrero
SELLER(S): William O Fisher
William Fisher Deimler, Craig Deimler

BUYER'S MAILING ADDRESS:
SELLER'S MAILING ADDRESS:

ADDRESS (including postal city) 2428 Mercer St
Harrisburg PA    ZIP 17104
in the municipality of City of Harrisburg, County of Dauphin
in the School District of Harrisburg City, in the Commonwealth of Pennsylvania.
Tax ID #(s): 13-047-027-000-0000   and/or
Identification (e.g., Parcel #; Lot, Block; Deed Book, Page, Recording Date):

**BUYER'S RELATIONSHIP WITH PA LICENSED BROKER**
☐ No Business Relationship (Buyer is not represented by a broker)

Broker (Company) Joy Daniels Real Estate Group
Licensee(s) (Name) Gianni Cavero-Aponte
Company License # RB067130
State License # RS348799
Company Address 2793 Old Post Rd Ste 200
Direct Phone(s)
Harrisburg PA 17110
Cell Phone(s) (407)308-9887
Company Phone
Email giannicaveroaponte@icloud.com
Company Fax
Licensee(s) is (check only one):
Broker is (check only one):
  ☐ Buyer Agent (all company licensees represent Buyer)
☑ Buyer Agent (Broker represents Buyer only)
☑ Buyer Agent with Designated Agency (only Licensee(s) named
☐ Dual Agent (See Dual and/or Designated Agent box below)
    above represent Buyer)
  ☐ Dual Agent (See Dual and/or Designated Agent box below)
☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Buyer)

**SELLER'S RELATIONSHIP WITH PA LICENSED BROKER**
☐ No Business Relationship (Seller is not represented by a broker)

Broker (Company) Keller Williams of Central PA
Licensee(s) (Name) TRACI MOFFITT
Company License # RB065950
State License # RS322181
Company Address 2040 Good Hope Rd
Direct Phone(s) (717) 574-6223
Enola PA 17025
Cell Phone(s)
Company Phone
Email traci.moffitt@kw.com
Company Fax
Licensee(s) is (check only one):
Broker is (check only one):
  ☑ Seller Agent (all company licensees represent Seller)
☑ Seller Agent (Broker represents Seller only)
☐ Seller Agent with Designated Agency (only Licensee(s) named
☐ Dual Agent (See Dual and/or Designated Agent box below)
    above represent Seller)
  ☐ Dual Agent (See Dual and/or Designated Agent box below)
☐ Transaction Licensee (Broker and Licensee(s) provide real estate services but do not represent Seller)

**DUAL AND/OR DESIGNATED AGENCY**
A Broker is a Dual Agent when a Broker represents both Buyer and Seller in the same transaction. A Licensee is a Dual Agent when a Licensee represents Buyer and Seller in the same transaction. All of Broker's licensees are also Dual Agents UNLESS there are separate Designated Agents for Buyer and Seller. If the same Licensee is designated for Buyer and Seller, the Licensee is a Dual Agent.

By signing this Agreement, Buyer and Seller each acknowledge having been previously informed of, and consented to, dual agency, if applicable.

Buyer Initials: KG     ASR Page 1 of 14     Seller Initials: CD WFD
COPYRIGHT PENNSYLVANIA ASSOCIATION OF REALTORS® 2023
rev. 9/22; rel. 1/23

"A"

## 1. By this Agreement, dated February 13, 2024
Seller hereby agrees to sell and convey to Buyer, who agrees to purchase, the identified Property.

## 2. PURCHASE PRICE AND DEPOSITS (4-14)
(A) Purchase Price $ 135,000.00
( One hundred thirty-five thousand and 00/100
U.S. Dollars), to be paid by Buyer as follows:
1. Initial Deposit, within _____ days (5 if not specified) of Execution Date,
   if not included with this Agreement: $ 2,000.00
2. Additional Deposit within _____ days of the Execution Date: $
3. $
Remaining balance will be paid at settlement.

(B) All funds paid by Buyer, including deposits, will be paid by check, cashier's check or wired funds. All funds paid by Buyer within 30 days of settlement, including funds paid at settlement, will be by cashier's check or wired funds, but not by personal check.

(C) Deposits, regardless of the form of payment, will be paid in U.S. Dollars to Broker for Seller (unless otherwise stated here: _____ ), who will retain deposits in an escrow account in conformity with all applicable laws and regulations until consummation or termination of this Agreement. Only real estate brokers are required to hold deposits in accordance with the rules and regulations of the State Real Estate Commission. Checks tendered as deposit monies may be held uncashed pending the execution of this Agreement.

## 3. SELLER ASSIST (If Applicable) (1-10)
Seller will pay $ 1,500.00 or _____ % of Purchase Price (0 if not specified) toward Buyer's costs, as permitted by the mortgage lender, if any. Seller is only obligated to pay up to the amount or percentage which is approved by mortgage lender.

## 4. SETTLEMENT AND POSSESSION (1-23)
(A) Settlement Date is April 12, 2024, or before if Buyer and Seller agree.
(B) Settlement will occur in the county where the Property is located or in an adjacent county, during normal business hours, unless Buyer and Seller agree otherwise.
(C) At time of settlement, the following will be pro-rated on a daily basis between Buyer and Seller, reimbursing where applicable: current taxes; rents; interest on mortgage assumptions; condominium fees and homeowner association fees; water and/or sewer fees, together with any other lienable municipal service fees. All charges will be prorated for the period(s) covered. Seller will pay up to and including the date of settlement and Buyer will pay for all days following settlement, unless otherwise stated here: _____
(D) For purposes of prorating real estate taxes, the "periods covered" are as follows:
   1. Municipal tax bills for all counties and municipalities in Pennsylvania are for the period from January 1 to December 31.
   2. School tax bills for the Philadelphia, Pittsburgh and Scranton School Districts are for the period from January 1 to December 31. School tax bills for all other school districts are for the period from July 1 to June 30.
(E) Conveyance from Seller will be by fee simple deed of special warranty unless otherwise stated here: _____
(F) Payment of transfer taxes will be divided equally between Buyer and Seller unless otherwise stated here: _____
(G) Possession is to be delivered by deed, existing keys and physical possession to a vacant Property free of debris, with all structures broom-clean, at day and time of settlement, unless Seller, before signing this Agreement, has identified in writing that the Property is subject to a lease.
(H) If Seller has identified in writing that the Property is subject to a lease or short-term rental agreement, possession is to be delivered by deed, existing keys and assignment of existing leases and short-term rental agreements for the Property, together with security deposits and interest, if any, at day and time of settlement. Seller will not enter into any new leases or short-term rental agreements, nor extend existing leases or short-term rental agreements, for the Property without the written consent of Buyer. Buyer will acknowledge existing lease(s) or short-term rental agreement(s) by initialing the lease(s) or short-term rental agreement(s) at the execution of this Agreement, unless otherwise stated in this Agreement.
☐ Tenant-Occupied Property Addendum (PAR Form TOP) is attached and made part of this Agreement.

## 5. DATES/TIME IS OF THE ESSENCE (1-10)
(A) Written acceptance of all parties will be on or before: 02/13/2024
(B) The Settlement Date and all other dates and times identified for the performance of any obligations of this Agreement are of the essence and are binding.
(C) The Execution Date of this Agreement is the date when Buyer and Seller have indicated full acceptance of this Agreement by signing and/or initialing it. For purposes of this Agreement, the number of days will be counted from the Execution Date, excluding the day this Agreement was executed and including the last day of the time period. **All changes to this Agreement should be initialed and dated.**
(D) The Settlement Date is not extended by any other provision of this Agreement and may only be extended by mutual written agreement of the parties.
(E) Certain terms and time periods are pre-printed in this Agreement as a convenience to the Buyer and Seller. All pre-printed terms and time periods are negotiable and may be changed by striking out the pre-printed text and inserting different terms acceptable to all parties, except where restricted by law.

Buyer Initials: KG  ASR Page 2 of 14  Seller Initials: [initials]

## 6. ZONING (4-14)
Failure of this Agreement to contain the zoning classification (except in cases where the property {and each parcel thereof, if subdividable} is zoned solely or primarily to permit single-family dwellings) will render this Agreement voidable at Buyer's option, and, if voided, any deposits tendered by the Buyer will be returned to the Buyer without any requirement for court action.
Zoning Classification, as set forth in the local zoning ordinance: RESIDENTIAL

## 7. FIXTURES AND PERSONAL PROPERTY (1-20)
(A) It is possible for certain items of personal property to be so integrated into the Property that they become fixtures and will be regarded as part of the Property and therefore included in a sale. Buyer and Seller are encouraged to be specific when negotiating what items will be included or excluded in this sale.
(B) INCLUDED in this sale, unless otherwise stated, are all existing items permanently installed in or on the Property, free of liens, and other items including plumbing; heating; gas fireplace logs; radiator covers; hardwired security systems; thermostats; lighting fixtures (including chandeliers and ceiling fans); pools, spas and hot tubs (including covers and cleaning equipment); electric animal fencing systems (excluding collars); garage door openers and transmitters; mounting brackets and hardware for television and sound equipment; unpotted shrubbery, plantings and trees; smoke detectors and carbon monoxide detectors; sump pumps; storage sheds; fences; mailboxes; wall to wall carpeting; existing window screens, storm windows and screen/storm doors; window covering hardware (including rods and brackets), shades and blinds; awnings; central vacuum system (with attachments); built-in air conditioners; built-in appliances; the range/oven; dishwashers; trash compactors; any remaining heating and cooking fuels stored on the Property at the time of settlement; and, if owned, solar panels, windmills, water treatment systems, propane tanks and satellite dishes. Unless stated otherwise, the following items are included in the sale, at no additional cost: All fixtures present at showing
(C) The following items are not owned by Seller and may be subject to a lease or other financing agreement. Contact the provider/vendor for more information (e.g., solar panels, windmills, water treatment systems, propane tanks and satellite dishes): _____
(D) EXCLUDED fixtures and items: _____

## 8. BUYER FINANCING (8-22)
(A) Buyer may elect to make this Agreement contingent upon obtaining mortgage financing. Regardless of **any** contingency elected in this Agreement, if Buyer chooses to obtain mortgage financing, the following apply:
   1. **Buyer will be in default of this Agreement if Buyer furnishes false information** to anyone concerning Buyer's financial and/or employment status, fails to cooperate in good faith with processing the mortgage loan application (including payment for and ordering of appraisal without delay), fails to lock in interest rate(s) as stated below, or otherwise causes the lender to reject, or refuse to approve or issue, a mortgage loan.
   2. Within _____ days (7 if not specified) from the Execution Date of this Agreement, Buyer will make a completed mortgage application (including payment for and ordering of credit reports without delay) for the mortgage terms and to the mortgage lender(s) identified in Paragraph 8(F), if any, otherwise to a responsible mortgage lender(s) of Buyer's choice. Broker for Buyer, if any, otherwise Broker for Seller, is authorized to communicate with the mortgage lender(s) to assist in the mortgage loan process. Broker for Seller, if any, is permitted to contact the morgage lender(s) at any time to determine the status of the mortgage loan application.
   3. Seller will provide access to insurers' representatives and, as may be required by mortgage lender(s), to surveyors, municipal officials, appraisers, and inspectors.
   4. If the mortgage lender(s) gives Buyer the right to lock in interest rate(s) at or below the maximum levels desired, Buyer will do so at least 15 DAYS before Settlement Date.
(B) The Loan-To-Value ratio (LTV) is used by lenders as one tool to help assess their potential risk of a mortgage loan. A particular LTV may be necessary to qualify for certain loans, or buyers might be required to pay additional fees if the LTV exceeds a specific level. The appraised value of the Property may be used by lenders to determine the maximum amount of a mortgage loan. The appraised value is determined by an independent appraiser, subject to the mortgage lender's underwriter review, and may be higher or lower than the Purchase Price and/or market price of the Property.

**FHA/VA, IF APPLICABLE**
(C) It is expressly agreed that notwithstanding any other provisions of this contract, Buyer will not be obligated to complete the purchase of the Property described herein or to incur any penalty by forfeiture of earnest money deposits or otherwise unless Buyer has been given, in accordance with HUD/FHA or VA requirements, a written statement by the Federal Housing Commissioner, Veterans Administration, or a Direct Endorsement Lender setting forth the appraised value of the Property of not less than $_____ (the Purchase Price as stated in this Agreement). Buyer will have the privilege and option of proceeding with consummation of the contract without regard to the amount of the appraised valuation. The appraised valuation is arrived at to determine the maximum mortgage the Department of Housing and Urban Development will insure. HUD does not warrant the value nor the condition of the Property. Buyer should satisfy himself/herself that the price and condition of the Property are acceptable.
**Warning:** Section 1010 of Title 18, U.S.C., Department of Housing and Urban Development and Federal Housing Administration Transactions, provides, "Whoever for the purpose of influencing in any way the action of such Department, makes, passes, utters or publishes any statement, knowing the same to be false shall be fined under this title or imprisoned not more than two years, or both."

Buyer Initials: KG  ASR Page 3 of 14  Seller Initials: [initials]

(D) **U.S. Department of Housing and Urban Development (HUD) NOTICE TO PURCHASERS: Buyer's Acknowledgement**
☐ Buyer has received the HUD Notice "For Your Protection: Get a Home Inspection." Buyer understands the importance of getting an independent home inspection and has thought about this before signing this Agreement. Buyer understands that FHA will not perform a home inspection nor guarantee the price or condition of the Property.
☐ Buyer will apply for Section 203(k) financing, and this contract is contingent upon mortgage approval (See Paragraph 8(F)) and Buyer's acceptance of additional required repairs as required by the lender.

(E) **Certification.** The undersigned, Seller(s) and Buyer(s) party to this transaction each certify that the terms of this contract for purchase are true to the best of our knowledge and belief, and that any other agreement entered into by any of these parties in connection with this transaction is attached hereto.

(F) **Mortgage Contingency**
☐ WAIVED. This sale is NOT contingent on mortgage financing, although Buyer may obtain mortgage financing and/or the parties may include an appraisal contingency. Buyer and Seller understand that the waiver of this contingency does not restrict Buyer's right to obtain mortgage financing for the Property.
☒ ELECTED. This sale is contingent upon Buyer obtaining mortgage financing according to the terms outlined below. Upon receiving documentation demonstrating the mortgage lender's approval, whether conditional or outright, of Buyer's mortgage application(s) according to the following terms, Buyer will promptly deliver a copy of the documentation to Seller, but in any case no later than February 26, 2024 (Commitment Date).

| First Mortgage on the Property | Second Mortgage on the Property |
|---|---|
| Loan Amount $ 135,000.00 | Loan Amount $ |
| Minimum Term 30 years | Minimum Term _____ years |
| Type of mortgage Convetional | Type of mortgage |
| For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed 100 % | For conventional loans, the Loan-To-Value (LTV) ratio is not to exceed _____ % |
| Mortgage lender First National | Mortgage lender |
| 6.875 | |
| Interest rate 5 %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of 8 %. | Interest rate _____ %; however, **Buyer agrees to accept the interest rate as may be committed by the mortgage lender,** not to exceed a maximum interest rate of _____ %. |
| Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. | Discount points, loan origination, loan placement and other fees charged by the lender as a percentage of the mortgage loan (excluding any mortgage insurance premiums or VA funding fee) not to exceed _____ % (0% if not specified) of the mortgage loan. |

1. The interest rate(s) and fee(s) provisions in Paragraph 8(F) are satisfied if the mortgage lender(s) gives Buyer the right to guarantee the interest rate(s) and fee(s) at or below the maximum levels stated. Buyer gives Seller the right, at Seller's sole option and as permitted by law and the mortgage lender(s), to contribute financially, without promise of reimbursement, to Buyer and/or the mortgage lender(s) to make the above mortgage term(s) available to Buyer.
2. Seller may terminate this Agreement after the Commitment Date by written notice to Buyer if:
   a. Seller does not receive a copy of the documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage application(s) by the Commitment Date;
   b. The documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage application(s) does not satisfy the loan terms outlined in Paragraph 8(F), OR
   c. The documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage application(s) contains any condition not specified in this Agreement (e.g., Buyer must settle on another property, an appraisal must be received by the lender, or the approval is not valid through the Settlement Date) that is not satisfied and/or removed in writing by the mortgage lender(s) within 7 DAYS after the Commitment Date, or any extension thereof, other than those conditions that are customarily satisfied at or near settlement (e.g., obtaining insurance, confirming employment).
3. Seller's right to terminate continues until Buyer delivers documentation demonstrating the mortgage lender's conditional or outright approval of Buyer's mortgage application(s) to Seller. Until Seller terminates this Agreement pursuant to this Paragraph, Buyer must continue to make a good faith effort to obtain mortgage financing. Termination of this Agreement by Buyer due to the mortgage lender's denial of Buyer's mortgage application(s) may demonstrate bad faith by Buyer and result in the forfeiture of deposit monies to Seller.
4. If this Agreement is terminated pursuant to Paragraphs 8(F)(2), or the mortgage loan(s) is not obtained for settlement, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 and this Agreement will be VOID. Seller will be responsible for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender(s).
5. If the mortgage lender(s), or a property and casualty insurer providing insurance required by the mortgage lender(s), requires repairs to the Property, Buyer will, upon receiving the requirements, deliver a copy of the requirements to Seller. Within 5 DAYS of receiving the copy of the requirements, Seller will notify Buyer whether Seller will make the required repairs at Seller's expense.
   a. If Seller makes the required repairs to the satisfaction of the mortgage lender and/or insurer, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.

Buyer Initials: KG  ASR Page 4 of 14  Seller Initials: [initials]

   b. If Seller will not make the required repairs, **or if Seller fails to respond within the stated time,** Buyer will, within 5 DAYS, notify Seller of Buyer's choice to:
      1) Make the repairs/improvements at Buyer's expense, with permission and access to the Property given by Seller, which will not be unreasonably withheld (Seller may require that Buyer sign a pre-settlement possession agreement such as the Pre-Settlement Possession Addendum [PAR Form PRE], which shall not, in and of itself, be considered unreasonable), OR
      2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
   **If Buyer fails to respond** within the time stated above or fails to terminate this Agreement by written notice to Seller within that time, **Buyer will accept the Property**, make the required repairs/improvements at Buyer's expense and agree to the RELEASE in Paragraph 28 of this Agreement.

## 9. CHANGE IN BUYER'S FINANCIAL STATUS (9-18)
If a change in Buyer's financial status affects Buyer's ability to purchase, Buyer will promptly notify Seller and lender(s) to whom the Buyer submitted a mortgage application, if any, in writing. A change in financial status includes, but is not limited to, loss or a change in employment; failure or loss of sale of Buyer's home; Buyer having incurred a new financial obligation; entry of a judgment against Buyer. **Buyer understands that applying for and/or incurring an additional financial obligation may affect Buyer's ability to purchase.**

## 10. SELLER REPRESENTATIONS (1-20)
(A) Status of Water
Seller represents that the Property is served by:
☒ Public Water  ☐ Community Water  ☐ On-site Water  ☐ None  ☐ _____
(B) Status of Sewer
1. Seller represents that the Property is served by:
☒ Public Sewer  ☐ Community Sewage Disposal System  ☐ Ten-Acre Permit Exemption (see Sewage Notice 2)
☐ Individual On-lot Sewage Disposal System (see Sewage Notice 1)  ☐ Holding Tank (see Sewage Notice 3)
☐ Individual On-lot Sewage Disposal System in Proximity to Well (see Sewage Notice 4, if applicable)
☐ None (see Sewage Notice 1)  ☐ None Available/Permit Limitations in Effect (see Sewage Notice 5)

2. **Notices Pursuant to the Pennsylvania Sewage Facilities Act**
**Notice 1:** There is no currently existing community sewage system available for the subject property. Section 7 of the Pennsylvania Sewage Facilities Act provides that no person shall install, construct, request bid proposals for construction, alter, repair or occupy any building or structure for which an individual sewage system is to be installed, without first obtaining a permit. Buyer is advised by this notice that, before signing this Agreement, Buyer should contact the local agency charged with administering the Act to determine the procedure and requirements for obtaining a permit for an individual sewage system. The local agency charged with administering the Act will be the municipality where the Property is located or that municipality working cooperatively with others.
**Notice 2:** This Property is serviced by an individual sewage system installed under the ten-acre permit exemption provisions of Section 7 of the Pennsylvania Sewage Facilities Act. (Section 7 provides that a permit may not be required before installing, constructing, awarding a contract for construction, altering, repairing or connecting to an individual sewage system where a ten-acre parcel or lot is subdivided from a parent tract after January 10, 1987). Buyer is advised that soils and site testing were not conducted and that, should the system malfunction, the owner of the Property or properties serviced by the system at the time of a malfunction may be held liable for any contamination, pollution, public health hazard or nuisance which occurs as a result.
**Notice 3:** This Property is serviced by a holding tank (permanent or temporary) to which sewage is conveyed by a water carrying system and which is designed and constructed to facilitate ultimate disposal of the sewage at another site. Pursuant to the Pennsylvania Sewage Facilities Act, Seller must provide a history of the annual cost of maintaining the tank from the date of its installation or December 14, 1995, whichever is later.
**Notice 4:** An individual sewage system has been installed at an isolation distance from a well that is less than the distance specified by regulation. The regulations at 25 Pa. Code §73.13 pertaining to minimum horizontal isolation distances provide guidance. Subsection (b) of §73.13 states that the minimum horizontal isolation distance between an individual water supply or water supply system suction line and treatment tanks shall be 50 feet. Subsection (c) of §73.13 states that the horizontal isolation distance between the individual water supply or water supply system suction line and the perimeter of the absorption area shall be 100 feet.
**Notice 5:** This lot is within an area in which permit limitations are in effect and is subject to those limitations. Sewage facilities are not available for this lot and construction of a structure to be served by sewage facilities may not begin until the municipality completes a major planning requirement pursuant to the Pennsylvania Sewage Facilities Act and regulations promulgated thereunder.

(C) **Historic Preservation**
Seller is not aware of historic preservation restrictions regarding the Property unless otherwise stated here: _____

(D) **Land Use Restrictions**
1. ☐ Property, or a portion of it, is subject to land use restrictions and may be preferentially assessed for tax purposes under the following Act(s) (see Notices Regarding Land Use Restrictions below):
☐ Agricultural Area Security Law (Right-to-Farm Act; Act 43 of 1981; 3 P.S. § 901 et seq.)
☐ Farmland and Forest Land Assessment Act (Clean and Green Program); Act 319 of 1974; 72 P.S. § 5490.1 et seq.)

Buyer Initials: KG  ASR Page 5 of 14  Seller Initials: [initials]
Case 1:20-bk-00841-HWV    Doc 399    Filed 02/21/24    Entered 02/21/24 13:51:16    Desc
Main Document    Page 6 of 11

258 ☐ Open Space Act (Act 442 of 1967; 32 P.S. § 5001 et seq.)
259 ☐ Conservation Program (16 U.S.C. § 3831 et seq.)
260 ☐ Other

2. **Notices Regarding Land Use Restrictions**
   a. **Pennsylvania Right-To-Farm Act:** The property you are buying may be located in an area where agricultural operations take place. Pennsylvania protects agricultural resources for the production of food and agricultural products. The law limits circumstances where normal agricultural operations may be subject to nuisance lawsuits or restrictive ordinances.
   b. **Clean and Green Program:** Properties enrolled in the Clean and Green Program receive preferential property tax assessment. Buyer and Seller have been advised of the need to contact the County Tax Assessment Office before the execution of this Agreement to determine the property tax implications that will or may result from the sale of the Property, or that may result in the future as a result of any change in use of the Property or the land from which it is being separated.
   c. **Open Space Act:** This Act enables counties to enter into covenants with owners of land designated as farm, forest, water supply, or open space land on an adopted municipal, county or regional plan for the purpose of preserving the land as open space. A covenant between the owner and county is binding upon any Buyer of the Property during the period of time that the covenant is in effect (5 or 10 years). Covenants automatically renew at the end of the covenant period unless specific termination notice procedures are followed. Buyer has been advised of the need to determine the restrictions that will apply from the sale of the Property to Buyer and the property tax implications that will or may result from a change in use of the Property, or any portion of it. Buyer is further advised to determine the term of any covenant now in effect.
   d. **Conservation Reserve (Enhancement) Program:** Properties enrolled in the Conservation Reserve Program or CREP are environmentally-sensitive areas, the owners of which receive compensation in exchange for an agreement to maintain the land in its natural state. Contracts last from 10 to 15 years and carry penalties to Seller if terminated early by Buyer. Buyer has been advised of the need to determine the restrictions on development of the Property and the term of any contract now in effect. Seller is advised to determine the financial implications that will or may result from the sale of the Property.

(E) **Real Estate Seller Disclosure Law**
Generally, the Real Estate Seller Disclosure Law requires that before an agreement of sale is signed, the seller in a residential real estate transfer must make certain disclosures regarding the property to potential buyers in a form defined by the law. A residential real estate transfer is defined as a sale, exchange, installment sales contract, lease with an option to buy, grant or other transfer of an interest in real property where **NOT LESS THAN ONE AND NOT MORE THAN FOUR RESIDENTIAL DWELLING UNITS** are involved. Disclosures for condominiums and cooperatives are limited to the seller's particular unit(s). Disclosures regarding common areas or facilities are not required, as those elements are already addressed in the laws that govern the resale of condominium and cooperative interests.

(F) **Public and/or Private Assessments**
1. Seller represents that, as of the date Seller signed this Agreement, no public improvement, condominium or homeowner association assessments have been made against the Property which remain unpaid, and that no notice by any government or public authority (excluding assessed value) has been served upon Seller or anyone on Seller's behalf, including notices relating to violations of zoning, housing, building, safety or fire ordinances that remain uncorrected, and that Seller knows of no condition that would constitute a violation of any such ordinances that remain uncorrected, unless otherwise specified here: _____
2. Seller knows of no other potential notices (including violations) and/or assessments except as follows: _____

(G) **Highway Occupancy Permit**
Access to a public road may require issuance of a highway occupancy permit from the Department of Transportation.

(H) **Internet of Things (IoT) Devices**
1. The presence of smart and green home devices that are capable of connecting to the Internet, directly or indirectly, and the data stored on those various devices make up a digital ecosystem in the Property sometimes referred to as the "Internet of Things (IoT)." Buyer and Seller acknowledge that IoT devices may transmit data to third parties outside of the control of their owner.
2. On or before settlement, Seller will make a reasonable effort to clear all data stored on all IoT devices located on the Property and included in the sale. Seller further acknowledges that all personal devices owned by Seller (including but not limited to cellular telephones, personal computers and tablets) having connectivity to any IoT device(s) located on the Property will be disconnected and cleared of relevant data prior to settlement. Further, no attempts will be made after settlement by Seller or anyone on Seller's behalf to access any IoT devices remaining on the Property.
3. Following settlement, Buyer will make a reasonable effort to clear all stored data from any IoT device(s) remaining on the Property and to restrict access to said devices by Seller, Seller's agents or any third party to whom Seller may have previously provided access. This includes, but is not limited to, restoring IoT devices to original settings, changing passwords or codes, updating network settings and submitting change of ownership and contact information to device manufacturers and service providers.
4. This paragraph will survive settlement.

**11. WAIVER OF CONTINGENCIES (9-05)**
If this Agreement is contingent on Buyer's right to inspect and/or repair the Property, or to verify insurability, environmental conditions, boundaries, certifications, zoning classification or use, or any other information regarding the Property, **Buyer's failure to exercise any of Buyer's options within the times set forth in this Agreement is a WAIVER of that contingency and Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement.**

Buyer Initials: KG         ASR Page 6 of 14         Seller Initials: [initials]

---

**12. BUYER'S DUE DILIGENCE/INSPECTIONS (10-18)**
(A) **Rights and Responsibilities**
1. Seller will provide access to insurers' representatives and, as may be required by this Agreement or by mortgage lender(s), to surveyors, municipal officials, appraisers and inspectors; in addition, unless otherwise agreed, only Parties and their real estate licensee(s) may attend any inspections.
2. Buyer may make two pre-settlement walk-through inspections of the Property for the limited purpose of determining that the condition of the Property is as required by this Agreement and any addenda. Buyer's right to these inspections is not waived by any other provision of this Agreement.
3. **Seller will have heating and all utilities (including fuel(s)) on for all inspections/appraisals.**
4. All inspectors, including home inspectors, are authorized by Buyer to provide a copy of any inspection Report to Broker for Buyer.
5. Seller has the right, upon request, to receive a free copy of any inspection Report from the party for whom it was prepared. Unless otherwise stated, Seller does not have the right to receive a copy of any lender's appraisal report.

(B) Buyer waives or elects at Buyer's expense to have the following inspections, certifications, and investigations (referred to as "Inspection" or "Inspections") performed by professional contractors, home inspectors, engineers, architects and other properly licensed or otherwise qualified professionals. All inspections shall be non-invasive, unless otherwise agreed in writing. If the same inspector is inspecting more than one system, the inspector must comply with the Home Inspection Law. (See Paragraph 12(D) for Notices Regarding Property and Environmental Inspections)

(C) For elected Inspections, Buyer will, within the Contingency Period stated in Paragraph 13(A), complete Inspections, obtain any Inspection Reports or results (referred to as "Report" or "Reports"), and accept the Property, terminate this Agreement, or submit a written corrective proposal to Seller, according to the terms of Paragraph 13(B).

**Home/Property Inspections and Environmental Hazards (mold, etc.)**

| Elected | | Waived |
|---|---|---|
| | Buyer may conduct an inspection of the Property's structural components; roof; exterior windows and exterior doors; exterior building material, fascia, gutters and downspouts; swimming pools, hot tubs and spas; appliances; electrical systems; interior and exterior plumbing; public sewer systems; heating and cooling systems; water penetration; electromagnetic fields; wetlands and flood plain delineation; structure square footage; mold and other environmental hazards (e.g., fungi, indoor air quality, asbestos, underground storage tanks, etc.); and any other items Buyer may select. If Buyer elects to have a home inspection of the Property, as defined in the Home Inspection Law, the home inspection must be performed by a full member in good standing of a national home inspection association, or a person supervised by a full member of a national home inspection association, in accordance with the ethical standards and code of conduct or practice of that association, or by a properly licensed or registered engineer or architect. (See Notices Regarding Property & Environmental Inspections) | KG |

**Wood Infestation**

| Elected | | Waived |
|---|---|---|
| | Buyer may obtain a written "Wood-Destroying Insect Infestation Inspection Report" from an inspector certified as a wood-destroying pests pesticide applicator and will deliver it and all supporting documents and drawings provided by the inspector to Seller. The Report is to be made satisfactory to and in compliance with applicable laws, mortgage lender requirements, and/or Federal Insuring and Guaranteeing Agency requirements. The Inspection is to be limited to all readily-visible and accessible areas of all structures on the Property, except fences. If the Inspection reveals active infestation(s), Buyer, at Buyer's expense, may obtain a Proposal from a wood-destroying pests pesticide applicator to treat the Property. If the Inspection reveals damage from active or previous infestation(s), Buyer may obtain a written Report from a professional contractor, home inspector or structural engineer that is limited to structural damage to the Property caused by wood-destroying organisms and a Proposal to repair the Property. | KG |

**Deeds, Restrictions and Zoning**

| Elected | | Waived |
|---|---|---|
| | Buyer may investigate easements, deed and use restrictions (including any historic preservation restrictions or ordinances) that apply to the Property and review local zoning ordinances. Buyer may verify that the present use of the Property (such as in-law quarters, apartments, home office, day care, commercial or recreational vehicle parking) is permitted and may elect to make the Agreement contingent upon an anticipated use. Present use: RESIDEN-TIAL | KG |

**Water Service**

| Elected | | Waived |
|---|---|---|
| | Buyer may obtain an Inspection of the quality and quantity of the water system from a properly licensed or otherwise qualified water/well testing company. If and as required by the inspection company, Seller, at Seller's expense, will locate and provide access to the on-site (or individual) water system. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement. | KG |

**Radon**

| Elected | | Waived |
|---|---|---|
| | Buyer may obtain a radon test of the Property from a certified inspector. The U.S. Environmental Protection Agency (EPA) advises corrective action if the average annual exposure to radon is equal to or higher than 0.02 working levels or 4 picoCuries/liter (4pCi/L). Radon is a natural, radioactive gas that is produced in the ground by the normal decay of uranium and radium. Studies indicate that extended exposure to high levels of radon gas can increase the risk of lung cancer. Radon can find its way into any air-space and can permeate a structure. If a house has a radon problem, it usually can be cured by increased ventilation and/or by preventing radon entry. Any person who tests, mitigates or safeguards a building for radon in Pennsylvania must be certified by the Department of Environmental Protection. Information about radon and about certified testing or mitigation firms is available through Department of Environmental Protection, Bureau of Radiation Protection, 13th Floor, Rachel Carson State Office Building, P.O. Box 8469, Harrisburg, PA 17105-8469, (800) 23RADON or (717) 783-3594. www.epa.gov | KG |

Buyer Initials: KG         ASR Page 7 of 14         Seller Initials: [initials]

---

386 **On-lot Sewage (If Applicable)**            Waived
387 Elected ___  Buyer may obtain an Inspection of the individual on-lot sewage disposal system, which may include a hydraulic     KG
load test, from a qualified, professional inspector. If and as required by the inspection company, Seller, at Seller's expense, will locate, provide access to, empty the individual on-lot sewage disposal system and provide all water needed, unless otherwise agreed. Seller will restore the Property to its previous condition, at Seller's expense, prior to settlement. See Paragraph 13(C) for more information regarding the Individual On-Lot Sewage Inspection Contingency.

393 **Property and Flood Insurance**            Waived
394 Elected ___  Buyer may determine the insurability of the Property by making application for property and casualty insurance     KG
for the Property to a responsible insurer. Broker for Buyer, if any, otherwise Broker for Seller, may communicate with the insurer to assist in the insurance process. If the Property is located in a specially-designated flood zone, Buyer may be required to carry flood insurance at Buyer's expense, which may need to be ordered 14 days or more prior to Settlement Date. Revised flood maps and changes to Federal law may substantially increase future flood insurance premiums or require insurance for formerly exempt properties. Buyer should consult with one or more flood insurance agents regarding the need for flood insurance and possible premium increases.

401 **Property Boundaries**            Waived
402 Elected ___  Buyer may engage the services of a surveyor, title abstractor, or other qualified professional to assess the legal     KG
description, certainty and location of boundaries and/or quantum of land. Most sellers have not had the Property surveyed and it is not a requirement of property transfer in Pennsylvania. Any fences, hedges, walls and other natural or constructed barriers may or may not represent the true boundary lines of the Property. Any numerical representations of size of property are approximations only and may be inaccurate.

407 **Lead-Based Paint Hazards (For Properties built prior to 1978 only)**            Waived
408 Elected ___  Before Buyer is obligated to purchase a residential dwelling built prior to 1978, Buyer has the option to conduct     KG
a risk assessment and/or inspection of the Property for the presence of lead-based paint and/or lead-based paint hazards. **Regardless of whether this inspection is elected or waived, the Residential Lead-Based Paint Hazard Reduction Act requires a seller of property built prior to 1978 to provide the Buyer with an EPA-approved lead hazards information pamphlet titled "Protect Your Family from Lead in Your Home," along with a separate form, attached to this Agreement, disclosing Seller's knowledge of lead-based paint hazards and any lead-based paint records regarding the Property.**

415 **Other**
416 Elected ___                                                                                            Waived
417                                                                                                           KG
418 The Inspections elected above do not apply to the following existing conditions and/or items:
419 _____
420 _____

(D) **Notices Regarding Property & Environmental Inspections**
1. **Exterior Building Materials:** Poor or improper installation of exterior building materials may result in moisture penetrating the surface of a structure where it may cause mold and damage to the building's frame.
2. **Asbestos:** Asbestos is linked with several adverse health effects, including various forms of cancer.
3. **Environmental Hazards:** The U.S. Environmental Protection Agency has a list of hazardous substances, the use and disposal of which are restricted by law. Generally, if hazardous substances are found on a property, it is the property owner's responsibility to dispose of them properly.
4. **Wetlands:** Wetlands are protected by the federal and state governments. Buyer may wish to hire an environmental engineer to investigate whether the Property is located in a wetlands area to determine if permits for plans to build, improve or develop the property would be affected or denied because of its location in a wetlands area.
5. **Mold, Fungi and Indoor Air Quality:** Indoor mold contamination and the inhalation of bioaerosols (bacteria, mold spores, pollen and viruses) have been associated with allergic responses.
6. **Additional Information:** Inquiries or requests for more information about asbestos and other hazardous substances can be directed to the U.S. Environmental Protection Agency, Ariel Rios Building, 1200 Pennsylvania Ave., N.W., Washington, D.C. 20460, (202) 272-0167, and/or the Department of Health, Commonwealth of Pennsylvania, Division of Environmental Health, Harrisburg, PA 17120. Information about indoor air quality issues is available through the Pennsylvania Department of Health and may be obtained by contacting Health & Welfare Building, 8th Floor West, 625 Forster St., Harrisburg, PA 17120, or by calling 1-877-724-3258.

**13. INSPECTION CONTINGENCY (10-18)**
(A) The Contingency Period is _____ days (10 if not specified) from the Execution Date of this Agreement for each Inspection elected in Paragraph 12(C).
(B) **Within the stated Contingency Period** and as the result of any Inspection elected in Paragraph 12(C), except as stated in Paragraph 13(C):
1. If the results of the inspections elected in Paragraph 12(C) are satisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller, accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement,** OR
2. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller and terminate this Agreement** by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR

Buyer Initials: KG         ASR Page 8 of 14         Seller Initials: [initials]

---

3. If the results of any inspection elected in Paragraph 12(C) are unsatisfactory to Buyer, Buyer WILL **present all Report(s) in their entirety to Seller with a Written Corrective Proposal ("Proposal") listing corrections and/or credits desired by Buyer.**
The Proposal may, but is not required to, include the name(s) of a properly licensed or qualified professional(s) to perform the corrections requested in the Proposal, provisions for payment, including retests, and a projected date for completion of the corrections. Buyer agrees that Seller will not be held liable for corrections that do not comply with mortgage lender or governmental requirements if performed in a workmanlike manner according to the terms of Buyer's Proposal.
   a. Following the end of the Contingency Period, Buyer and Seller will have _____ days (5 if not specified) for a Negotiation Period. During the Negotiation Period:
   (1) Seller will acknowledge in writing Seller's agreement to satisfy all the terms of Buyer's Proposal OR
   (2) Buyer and Seller will negotiate another mutually acceptable written agreement, providing for any repairs or improvements to the Property and/or any credit to Buyer at settlement, as acceptable to the mortgage lender, if any.
   If Seller agrees to satisfy all the terms of Buyer's Proposal, or Buyer and Seller enter into another mutually acceptable written agreement, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement and the Negotiation Period ends.
   b. If no mutually acceptable written agreement is reached, or if Seller fails to respond during the Negotiation Period, within _____ days (2 if not specified) **following the end of the Negotiation Period,** Buyer will:
   (1) Accept the Property with the information stated in the Report(s) and agree to the RELEASE in Paragraph 28 of this Agreement, OR
   (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
   **If Buyer and Seller do not reach a mutually acceptable written agreement, and Buyer does not terminate this Agreement by written notice to Seller within the time allotted in Paragraph 13(B)(3)(b), Buyer will accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement. Ongoing negotiations do not automatically extend the Negotiation Period.**

(C) If a Report reveals the need to expand or replace the existing individual on-lot sewage disposal system, Seller may, within _____ days (25 if not specified) of receiving the Report, submit a Proposal to Buyer. The Proposal will include, but not be limited to, the name of the company to perform the expansion or replacement; provisions for payment, including retests; and a projected completion date for corrective measures. Within __5__ DAYS of receiving Seller's Proposal, or **if no Proposal is provided within the stated time**, Buyer will notify Seller in writing of Buyer's choice to:
1. Agree to the terms of the Proposal, accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement, OR
3. Accept the Property and the existing system and agree to the RELEASE in Paragraph 28 of this Agreement. If required by any mortgage lender and/or any governmental authority, Buyer will correct the defects before settlement or within the time required by the mortgage lender and/or governmental authority, at Buyer's sole expense, with permission and access to the Property given by Seller, which may not be unreasonably withheld. If Seller denies Buyer permission and/or access to correct the defects, Buyer may, within __5__ DAYS of Seller's denial, terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of Paragraph 26 of this Agreement.
**If Buyer fails to respond** within the time stated in Paragraph 13(C) **or fails to terminate** this Agreement by written notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.

**14. TITLES, SURVEYS AND COSTS (6-20)**
(A) Within __15__ days (7 if not specified) from the Execution Date of this Agreement, Buyer will order from a reputable title company for delivery to Seller a comprehensive title report on the Property. Upon receipt, Buyer will deliver a free copy of the title report to Seller.
(B) Buyer is encouraged to obtain an owner's title insurance policy to protect Buyer. An owner's title insurance policy is different from a lender's title insurance policy, which will not protect Buyer from claims and attacks on the title. Owner's title insurance policies come in standard and enhanced versions; **Buyer should consult with a title insurance agent about Buyer's options.** Buyer agrees to release and discharge any and all claims and losses against Broker for Buyer should Buyer neglect to obtain an owner's title insurance policy.
(C) Buyer will pay for the following: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3) Appraisal fees and charges paid in advance to mortgage lender; (4) Buyer's customary settlement costs and accruals.
(D) Any survey or surveys required by the title insurance company or the abstracting company for preparing an adequate legal description of the Property (or the correction thereof) will be obtained and paid for by Seller. Any survey or surveys desired by Buyer or required by the mortgage lender will be obtained and paid for by Buyer.
(E) The Property will be conveyed with good and marketable title that is insurable by a reputable title insurance company at the regular rates, free and clear of all liens, encumbrances, and easements, **excepting however** the following: existing deed restrictions; historic preservation restrictions or ordinances; building restrictions; ordinances; easements of roads; easements visible upon the ground; easements of record; and privileges or rights of public service companies, if any.
(F) If a change in Seller's financial status affects Seller's ability to convey title to the Property on or before the Settlement Date, or any extension thereof, Seller shall promptly notify Buyer in writing. A change in financial status includes, but is not limited to, Seller filing bankruptcy; filing of a foreclosure lawsuit against Seller; entry of a monetary judgment against Seller; notice of public tax sale affecting the Property; and Seller learning that the sale price of the Property is no longer sufficient to satisfy all liens and encumbrances against the Property.

Buyer Initials: KG         ASR Page 9 of 14         Seller Initials: 

---

Case 1:20-bk-00841-HWV    Doc 399    Filed 02/21/24    Entered 02/21/24 13:51:16    Desc
Main Document    Page 7 of 11

dotloop signature verification: dtlp.us/f7hV-Mo32-7Lq4
DigiSign Verified - a48c54d0-8bca-4fb2-bb21-fe4d1c0afe38'

517 (G) If Seller is unable to give good and marketable title that is insurable by a reputable title insurance company at the regular rates,
518 as specified in Paragraph 14(E), Buyer may terminate this Agreement by written notice to Seller, with all deposit monies returned
519 to Buyer according to the terms of Paragraph 26 of this Agreement, or take such title as Seller can convey. If the title condition
520 precludes Seller from conveying title, Buyer's sole remedy shall be to terminate this Agreement. Upon termination, all deposit
521 monies shall be returned to Buyer according to the terms of Paragraph 26 of this Agreement and Seller will reimburse Buyer for
522 any costs incurred by Buyer for any inspections or certifications obtained according to the terms of this Agreement, and for those
523 items specified in Paragraph 14(C) items (1), (2), (3) and in Paragraph 14(D).
524 (H) Oil, gas, mineral, or other rights of this Property may have been previously conveyed or leased, and Sellers make no representation
525 about the status of those rights unless indicated elsewhere in this Agreement.
526 ☐ **Oil, Gas and Mineral Rights Addendum (PAR Form OGM) is attached to and made part of this Agreement.**
527 (I) **COAL NOTICE (Where Applicable)**
528 THIS DOCUMENT MAY NOT SELL, CONVEY, TRANSFER, INCLUDE OR INSURE THE TITLE TO THE COAL AND RIGHTS OF SUPPORT UNDER-
529 NEATH THE SURFACE LAND DESCRIBED OR REFERRED TO HEREIN, AND THE OWNER OR OWNERS OF SUCH COAL MAY HAVE THE COM-
530 PLETE LEGAL RIGHT TO REMOVE ALL SUCH COAL AND IN THAT CONNECTION, DAMAGE MAY RESULT TO THE SURFACE OF THE LAND AND
531 ANY HOUSE, BUILDING OR OTHER STRUCTURE ON OR IN SUCH LAND. (This notice is set forth in the manner provided in Section 1 of
532 the Act of July 17, 1957, P.L. 984.) "Buyer acknowledges that he may not be obtaining the right of protection against subsidence
533 resulting from coal mining operations, and that the property described herein may be protected from damage due to mine subsid-
534 ence by a private contract with the owners of the economic interests in the coal. This acknowledgement is made for the purpose
535 of complying with the provisions of Section 14 of the Bituminous Mine Subsidence and the Land Conservation Act of April 27,
536 1966." Buyer agrees to sign the deed from Seller which deed will contain the aforesaid provision.
537 (J) The Property is not a "recreational cabin" as defined in the Pennsylvania Construction Code Act unless otherwise stated here: _____
538
539 (K) 1. This property is not subject to a Private Transfer Fee Obligation unless otherwise stated here:
540 ☐ **Private Transfer Fee Addendum (PAR Form PTF) is attached to and made part of this Agreement.**
541 2. Notices Regarding Private Transfer Fees: In Pennsylvania, Private Transfer Fees are defined and regulated in the Private
542 Transfer Fee Obligation Act (Act 1 of 2011; 68 Pa.C.S. §§ 8101, et. seq.), which defines a Private Transfer Fee as "a fee that
543 is payable upon the transfer of an interest in real property, or payable for the right to make or accept the transfer, if the obli-
544 gation to pay the fee or charge runs with title to the property or otherwise binds subsequent owners of property, regardless of
545 whether the fee or charge is a fixed amount or is determined as a percentage of the value of the property, the purchase price or
546 other consideration given for the transfer." A Private Transfer Fee must be properly recorded to be binding, and sellers must
547 disclose the existence of the fees to prospective buyers. Where a Private Transfer Fee is not properly recorded or disclosed,
548 the Act gives certain rights and protections to buyers.
549 **15. NOTICES, ASSESSMENTS AND MUNICIPAL REQUIREMENTS (9-18)**
550 (A) In the event any notices of public and/or private assessments as described in Paragraph 10(F) (excluding assessed value) are
551 received after Seller has signed this Agreement and before settlement, Seller will within __5__ DAYS of receiving the notices and/or
552 assessments provide a copy of the notices and/or assessments to Buyer and will notify Buyer in writing that Seller will:
553 1. Fully comply with the notices and/or assessments, at Seller's expense, before settlement. If Seller fully complies with the
554 notices and/or assessments, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
555 2. Not comply with the notices and/or assessments. If Seller chooses not to comply with the notices and/or assessments, or **fails
556 within the stated time to notify Buyer whether Seller will comply,** Buyer will notify Seller in writing within __5__ DAYS
557 that Buyer will:
558 a. Comply with the notices and/or assessments at Buyer's expense, accept the Property, and agree to the RELEASE in
559 Paragraph 28 of this Agreement, OR
560 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
561 Paragraph 26 of this Agreement.
562 **If Buyer fails to respond** within the time stated in Paragraph 15(A)(2) **or fails to terminate** this Agreement by written notice
563 to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
564 (B) If required by law, within __30__ DAYS from the Execution Date of this Agreement, but in no case later than __15__ DAYS prior to
565 Settlement Date, Seller will order at Seller's expense a certification from the appropriate municipal department/s disclosing notice
566 of any uncorrected violations of zoning, housing, building, safety or fire ordinances and/or a certificate permitting occupancy of
567 the Property. If Buyer receives a notice of any required repairs/improvements, Buyer will promptly deliver a copy of the notice to
568 Seller.
569 1. Within __5__ DAYS of receiving notice from the municipality that repairs/improvements are required, Seller will deliver a
570 copy of the notice to Buyer and notify Buyer in writing that Seller will:
571 a. Make the required repairs/improvements to the satisfaction of the municipality. If Seller makes the required repairs/
572 improvements, Buyer accepts the Property and agrees to the RELEASE in Paragraph 28 of this Agreement, OR
573 b. Not make the required repairs/improvements. If Seller chooses not to make the required repairs/improvements, Buyer will
574 notify Seller in writing within __5__ DAYS that Buyer will:
575 (1) Accept a temporary access certificate or temporary use and occupancy certificate, agree to the RELEASE in Paragraph
576 28 of this Agreement and make the repairs at Buyer's expense after settlement, OR
577 (2) Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms
578 of Paragraph 26 of this Agreement.
579 **If Buyer fails to respond** within the time stated in Paragraph 15(B)(1)(b) **or fails to terminate** this Agreement by writ-
580 ten notice to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this

581 Buyer Initials: KG  ASR Page 10 of 14  Seller Initials: 

582 Agreement, and **Buyer accepts the responsibility to perform the repairs/improvements** according to the terms of the
583 notice provided by the municipality.
584 2. If repairs/improvements are required and Seller fails to provide a copy of the notice to Buyer as required in this Paragraph,
585 Seller will perform all repairs/improvements as required by the notice at Seller's expense. **Paragraph 15(B)(2) will survive
586 settlement.**
587 **16. CONDOMINIUM/PLANNED COMMUNITY (HOMEOWNER ASSOCIATIONS) NOTICE (9-16)**
588 (A) Property is NOT a Condominium or part of a Planned Community unless checked below.
589 ☐ CONDOMINIUM. The Property is a unit of a condominium that is primarily run by a unit owners' association. Section 3407
590 of the Uniform Condominium Act of Pennsylvania requires Seller to furnish Buyer with a Certificate of Resale and copies of
591 the condominium declaration (other than plats and plans), the bylaws and the rules and regulations of the association.
592 ☐ PLANNED COMMUNITY (HOMEOWNER ASSOCIATION). The Property is part of a planned community as defined by
593 the Uniform Planned Community Act. Section 5407(a) of the Act requires Seller to furnish Buyer with a copy of the decla-
594 ration (other than plats and plans), the bylaws, the rules and regulations of the association, and a Certificate containing the
595 provisions set forth in Section 5407(a) of the Act.
596 (B) **THE FOLLOWING APPLIES TO INITIAL SALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM
597 OR A PLANNED COMMUNITY:**
598 If this is the first sale of the property after creation of the condominium or planned community (therefore a sale by the Declarant),
599 Seller shall furnish Buyer with a Public Offering Statement no later than the date Buyer executes this Agreement. Buyer may void
600 this Agreement within 15 days (if a condominium) or within 7 days (if part of a planned community) after receipt of the Public
601 Offering Statement or any amendment to the Statement that materially and adversely affects Buyer. Upon Buyer declaring this
602 Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of this Agreement.
603 (C) **THE FOLLOWING APPLIES TO RESALES OF PROPERTIES THAT ARE PART OF A CONDOMINIUM OR A
604 PLANNED COMMUNITY:**
605 1. Within __15__ DAYS from the Execution Date of this Agreement, Seller, at Seller's expense, will request from the association
606 a Certificate of Resale and any other documents necessary to enable Seller to comply with the relevant Act. The Act provides
607 that the association is required to provide these documents within 10 days of Seller's request.
608 2. Seller will promptly deliver to Buyer all documents received from the association. Under the Act, Seller is not liable to Buyer
609 for the failure of the association to provide the Certificate in a timely manner or for any incorrect information provided by the
610 association in the Certificate.
611 3. The Act provides that Buyer may declare this Agreement VOID at any time before Buyer receives the association documents
612 and for 5 days after receipt, OR until settlement, whichever occurs first. Buyer's notice to Seller must be in writing; upon
613 Buyer declaring this Agreement void, all deposit monies will be returned to Buyer according to the terms of Paragraph 26 of
614 this Agreement.
615 4. If the association has the right to buy the Property (right of first refusal), and the association exercises that right, Seller will
616 reimburse Buyer for any costs incurred by Buyer for any inspections or certifications obtained according to the terms of the
617 Agreement, and any costs incurred by Buyer for: (1) Title search, title insurance and/or mechanics' lien insurance, or any fee for
618 cancellation; (2) Flood insurance, fire insurance, hazard insurance, mine subsidence insurance, or any fee for cancellation; (3)
619 Appraisal fees and charges paid in advance to mortgage lender.
620 **17. REAL ESTATE TAXES AND ASSESSED VALUE (4-14)**
621 In Pennsylvania, taxing authorities (school districts and municipalities) and property owners may appeal the assessed value of a prop-
622 erty at the time of sale, or at any time thereafter. A successful appeal by a taxing authority may result in a higher assessed value for
623 the property and an increase in property taxes. Also, periodic county-wide property reassessments may change the assessed value of
624 the property and result in a change in property tax.
625 **18. MAINTENANCE AND RISK OF LOSS (1-14)**
626 (A) Seller will maintain the Property (including, but not limited to, structures, grounds, fixtures, appliances, and personal property
627 specifically listed in this Agreement) in its present condition, normal wear and tear excepted.
628 (B) If any part of the Property included in the sale fails before settlement, Seller will:
629 1. Repair or replace that part of the Property before settlement, OR
630 2. Provide prompt written notice to Buyer of Seller's decision to:
631 a. Credit Buyer at settlement for the fair market value of the failed part of the Property, as acceptable to the mortgage lender,
632 if any, OR
633 b. Not repair or replace the failed part of the Property, and not credit Buyer at settlement for the fair market value of the failed
634 part of the Property.
635 3. If Seller does not repair or replace the failed part of the Property or agree to credit Buyer for its fair market value, **or if Seller fails
636 to notify Buyer of Seller's choice,** Buyer will notify Seller in writing within __5__ DAYS or before Settlement Date, whichever
637 is earlier, that Buyer will:
638 a. Accept the Property and agree to the RELEASE in Paragraph 28 of this Agreement, OR
639 b. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
640 Paragraph 26 of this Agreement.
641 **If Buyer fails to respond** within the time stated in Paragraph 18(B)(3) **or fails to terminate** this Agreement by written notice
642 to Seller within that time, **Buyer will accept the Property** and agree to the RELEASE in Paragraph 28 of this Agreement.
643 (C) Seller bears the risk of loss from fire or other casualties until settlement. If any property included in this sale is destroyed and not
644 replaced prior to settlement, Buyer will:

645 Buyer Initials: KG  ASR Page 11 of 14  Seller Initials: 

646 1. Accept the Property in its then current condition together with the proceeds of any insurance recovery obtainable by Seller, OR
647 2. Terminate this Agreement by written notice to Seller, with all deposit monies returned to Buyer according to the terms of
648 Paragraph 26 of this Agreement.
649 **19. HOME WARRANTIES (1-10)**
650 At or before settlement, either party may purchase a home warranty for the Property from a third-party vendor. Buyer and Seller
651 understand that a home warranty for the Property does not alter any disclosure requirements of Seller, will not cover or warrant any
652 pre-existing defects of the Property, and will not alter, waive or extend any provisions of this Agreement regarding inspections or
653 certifications that Buyer has elected or waived as part of this Agreement. Buyer and Seller understand that a broker who recommends
654 a home warranty may have a business relationship with the home warranty company that provides a financial benefit to the broker.
655 **20. RECORDING (9-05)**
656 This Agreement will not be recorded in the Office of the Recorder of Deeds or in any other office or place of public record. If Buyer
657 causes or permits this Agreement to be recorded, Seller may elect to treat such act as a default of this Agreement.
658 **21. ASSIGNMENT (1-10)**
659 This Agreement is binding upon the parties, their heirs, personal representatives, guardians and successors, and to the extent assign-
660 able, on the assigns of the parties hereto. Buyer will not transfer or assign this Agreement without the written consent of Seller unless
661 otherwise stated in this Agreement. Assignment of this Agreement may result in additional transfer taxes.
662 **22. GOVERNING LAW, VENUE AND PERSONAL JURISDICTION (9-05)**
663 (A) The validity and construction of this Agreement, and the rights and duties of the parties, will be governed in accordance with the
664 laws of the Commonwealth of Pennsylvania.
665 (B) The parties agree that any dispute, controversy or claim arising under or in connection with this Agreement or its performance
666 by either party submitted to a court shall be filed exclusively by and in the state or federal courts sitting in the Commonwealth of
667 Pennsylvania.
668 **23. FOREIGN INVESTMENT IN REAL PROPERTY TAX ACT OF 1980 (FIRPTA) (1-17)**
669 The disposition of a U.S. real property interest by a foreign person (the transferor) is subject to the Foreign Investment in Real Property
670 Tax Act of 1980 (FIRPTA) income tax withholding. FIRPTA authorized the United States to tax foreign persons on dispositions of U.S.
671 real property interests. This includes but is not limited to a sale or exchange, liquidation, redemption, gift, transfers, etc. Persons pur-
672 chasing U.S. real property interests (transferee) from foreign persons, certain purchasers' agents, and settlement officers are required
673 to withhold up to 15 percent of the amount realized (special rules for foreign corporations). Withholding is intended to ensure U.S.
674 taxation of gains realized on disposition of such interests. The transferee/Buyer is the withholding agent. If you are the transferee/
675 Buyer you must find out if the transferor is a foreign person as defined by the Act. If the transferor is a foreign person and you fail to
676 withhold, you may be held liable for the tax.
677 **24. NOTICE REGARDING CONVICTED SEX OFFENDERS (MEGAN'S LAW) (4-14)**
678 The Pennsylvania General Assembly has passed legislation (often referred to as "Megan's Law," 42 Pa.C.S. § 9791 et seq.) providing
679 for community notification of the presence of certain convicted sex offenders. **Buyers are encouraged to contact the municipal
680 police department or the Pennsylvania State Police** for information relating to the presence of sex offenders near a particular prop-
681 erty, or to check the information on the Pennsylvania State Police Web site at www.pameganslaw.state.pa.us.
682 **25. REPRESENTATIONS (1-10)**
683 (A) All representations, claims, advertising, promotional activities, brochures or plans of any kind made by Seller, Brokers, their licens-
684 ees, employees, officers or partners are not a part of this Agreement unless expressly incorporated or stated in this Agreement.
685 This Agreement contains the whole agreement between Seller and Buyer, and there are no other terms, obligations, covenants,
686 representations, statements or conditions, oral or otherwise, of any kind whatsoever concerning this sale. This Agreement will not
687 be altered, amended, changed or modified except in writing executed by the parties.
688 (B) Unless otherwise stated in this Agreement, **Buyer has inspected the Property** (including fixtures and any personal property spe-
689 cifically listed herein) **before signing this Agreement or has waived the right to do so, and agrees to purchase the Property
690 IN ITS PRESENT CONDITION,** subject to inspection contingencies elected in this Agreement. Buyer acknowledges that
691 Brokers, their licensees, employees, officers or partners have not made an independent examination or determination of the
692 structural soundness of the Property, the age or condition of the components, environmental conditions, the permitted uses, nor of
693 conditions existing in the locale where the Property is situated; nor have they made a mechanical inspection of any of the systems
694 contained therein.
695 (C) Any repairs required by this Agreement will be completed in a workmanlike manner.
696 (D) Broker(s) have provided or may provide services to assist unrepresented parties in complying with this Agreement.
697 **26. DEFAULT, TERMINATION AND RETURN OF DEPOSITS (1-18)**
698 (A) Where Buyer terminates this Agreement pursuant to any right granted by this Agreement, Buyer will be entitled to a return of all
699 deposit monies paid on account of Purchase Price pursuant to the terms of Paragraph 26(B), and this Agreement will be VOID.
700 Termination of this Agreement may occur for other reasons giving rise to claims by Buyer and/or Seller for the deposit monies.
701 (B) Regardless of the apparent entitlement to deposit monies, Pennsylvania law does not allow a Broker holding deposit monies to
702 determine who is entitled to the deposit monies when settlement does not occur. Broker can only release the deposit monies:
703 1. If this Agreement is terminated prior to settlement and there is no dispute over entitlement to the deposit monies. A written
704 agreement signed by both parties is evidence that there is no dispute regarding deposit monies.
705 2. If, after Broker has received deposit monies, Broker receives a written agreement that is signed by Buyer and Seller, directing
706 Broker how to distribute some or all of the deposit monies.
707 3. According to the terms of a final order of court.
708 4. According to the terms of a prior written agreement between Buyer and Seller that directs the Broker how to distribute the
709 deposit monies if there is a dispute between the parties that is not resolved. (See Paragraph 26(C))

710 Buyer Initials: KG  ASR Page 12 of 14  Seller Initials: 

711 (C) Buyer and Seller agree that if there is a dispute over the entitlement to deposit monies that is unresolved __30__ days (180 if not
712 specified) after the Settlement Date stated in Paragraph 4(A) (or any written extensions thereof) or following termination of the
713 Agreement, whichever is earlier, then the Broker holding the deposit monies will, within 30 days of receipt of Buyer's written
714 request, distribute the deposit monies to Buyer unless the Broker is in receipt of verifiable written notice that the dispute is the
715 subject of litigation or mediation. If Broker has received verifiable written notice of litigation or mediation prior to the receipt of
716 Buyer's request for distribution, Broker will continue to hold the deposit monies until receipt of a written distribution agreement
717 between Buyer and Seller or a final court order. Buyer and Seller are advised to initiate litigation or mediation for any portion of
718 the deposit monies prior to any distribution made by Broker pursuant to this paragraph. Buyer and Seller agree that the distribution
719 of deposit monies based upon the passage of time does not legally determine entitlement to deposit monies, and that the parties
720 maintain their legal rights to pursue litigation even after a distribution is made.
721 (D) Buyer and Seller are advised that the Broker who holds or distributes deposit monies pursuant to the terms of Paragraph 26 or Pennsylvania
722 law will not be liable. Buyer and Seller agree that if any Broker or affiliated licensee is named in litigation regarding deposit
723 monies, the attorneys' fees and costs of the Broker(s) and licensee(s) will be paid by the party naming them in litigation.
724 (E) Seller has the option of retaining all sums paid by Buyer, including the deposit monies, should Buyer:
725 1. Fail to make any additional payments as specified in Paragraph 2, OR
726 2. Furnish false or incomplete information to Seller, Broker(s), or any other party identified in this Agreement concerning
727 Buyer's legal or financial status, OR
728 3. Violate or fail to fulfill and perform any other terms or conditions of this Agreement.
729 (F) **Unless otherwise checked in Paragraph 26(G),** Seller may elect to retain those sums paid by Buyer, including deposit monies:
730 1. On account of purchase price, OR
731 2. As monies to be applied to Seller's damages, OR
732 3. As liquidated damages for such default.
733 (G) ☒ **SELLER IS LIMITED TO RETAINING THOSE SUMS PAID BY BUYER, INCLUDING DEPOSIT MONIES, AS
734 LIQUIDATED DAMAGES.**
735 (H) If Seller retains all sums paid by Buyer, including deposit monies, as liquidated damages pursuant to Paragraph 26(F) or (G), Buyer
736 and Seller are released from further liability or obligation and this Agreement is VOID.
737 (I) Brokers and licensees are not responsible for unpaid deposits.
738 **27. MEDIATION (7-20)**
739 Buyer and Seller will submit all disputes or claims that arise from this Agreement, including disputes and claims over deposit monies,
740 to mediation. Mediation will be conducted in accordance with the Rules and Procedures of the Home Sellers/Home Buyers Dispute
741 Resolution System, unless it is not available, in which case Buyer and Seller will mediate according to the terms of the mediation sys-
742 tem offered or endorsed by the local Association of Realtors®. Mediation fees, contained in the mediator's fee schedule, will be divided
743 equally among the parties and will be paid before the mediation conference. Legal proceedings may be initiated prior to the comple-
744 tion of the mediation process to stop any statute of limitations from expiring and for the purpose of indexing a lis pendens by Buyer
745 to prevent the transfer of title to a third party when Buyer is seeking to purchase the Property. The parties agree that all proceedings
746 shall be stayed until the completion of mediation and that a court of competent jurisdiction may award attorneys' fees to the prevailing
747 party should the court find that a party has unreasonably breached this provision or acted in bad faith. Any agreement reached through
748 mediation and signed by the parties will be binding. Any agreement to mediate disputes or claims arising from this Agreement will
749 survive settlement.
750 **28. RELEASE (9-05)**
751 **Buyer releases, quit claims and forever discharges SELLER, ALL BROKERS, their LICENSEES, EMPLOYEES and any
752 OFFICER or PARTNER of any one of them and any other PERSON, FIRM or CORPORATION who may be liable by or
753 through them, from any and all claims, losses or demands,** including, but not limited to, personal injury and property damage and
754 all of the consequences thereof, whether known or not, which may arise from the presence of termites or other wood-boring insects,
755 radon, lead-based paint hazards, mold, fungi or indoor air quality, environmental hazards, any defects in the individual on-lot sewage
756 disposal system or deficiencies in the on-site water service system, or any defects or conditions on the Property. Should Seller be in
757 default under the terms of this Agreement or in violation of any Seller disclosure law or regulation, this release does not deprive Buyer
758 of any right to pursue any remedies that may be available under law or equity. This release will survive settlement.
759 **29. REAL ESTATE RECOVERY FUND (4-18)**
760 A Real Estate Recovery Fund exists to reimburse any persons who have obtained a final civil judgment against a Pennsylvania real
761 estate licensee (or a licensee's affiliates) owing to fraud, misrepresentation, or deceit in a real estate transaction and who have been
762 unable to collect the judgment after exhausting all legal and equitable remedies. For complete details about the Fund, call (717) 783-
763 3658.
764 **30. COMMUNICATIONS WITH BUYER AND/OR SELLER (1-10)**
765 (A) If Buyer is obtaining mortgage financing, Buyer shall promptly deliver to Broker for Buyer, if any, a copy of all Loan Estimate(s)
766 and Closing Disclosure(s) upon receipt.
767 (B) Wherever this Agreement contains a provision that requires or allows communication/delivery to a Buyer, that provision shall be
768 satisfied by communication/delivery to the Broker for Buyer, if any, **except for documents required to be delivered pursuant
769 to Paragraph 16**. If there is no Broker for Buyer, those provisions may be satisfied only by communication/delivery being made
770 directly to the Buyer, unless otherwise agreed to by the parties. Wherever this Agreement contains a provision that requires or
771 allows communication/delivery to a Seller, that provision shall be satisfied by communication/delivery to the Broker for Seller, if
772 any. If there is no Broker for Seller, those provisions may be satisfied only by communication/delivery being made directly to the
773 Seller, unless otherwise agreed to by the parties.

774 Buyer Initials: KG  ASR Page 13 of 14  Seller Initials:

dotloop signature verification: dtlp.us/f7hV-Mo32-7Lq4
DigiSign Verified - a48c54d0-8bca-4fb2-bb21-fe4d1c0afe38

775 **31. HEADINGS (4-14)**
776 The section and paragraph headings in this Agreement are for convenience only and are not intended to indicate all of the matter in the
777 sections which follow them. They shall have no effect whatsoever in determining the rights, obligations or intent of the parties.
778 **32. SPECIAL CLAUSES (1-10)**
779 (A) **The following are attached to and made part of this Agreement if checked:**
780 ☐ Sale & Settlement of Other Property Contingency Addendum (PAR Form SSP)
781 ☐ Sale & Settlement of Other Property Contingency with Right to Continue Marketing Addendum (PAR Form SSPCM)
782 ☐ Sale & Settlement of Other Property Contingency with Timed Kickout Addendum (PAR Form SSPTKO)
783 ☐ Settlement of Other Property Contingency Addendum (PAR Form SOP)
784 ☐ Appraisal Contingency Addendum (PAR Form ACA)
785 ☐ Short Sale Addendum (PAR Form SHS)
786 ☐ _____
787 ☐ _____
788 ☐ _____
789 (B) **Additional Terms:**
790     Seller Agrees to replace all windows
791
792     Offer is subject to approval of the US Bankruptcy Court     *CD* *WFD* KG
                                                                  02/13/24   02/13/24
                                                                  8:24 PM EST 8:44 PM EST
                                                                  dotloop verified dotloop verified
793
...
801 Buyer and Seller acknowledge receipt of a copy of this Agreement at the time of signing.
802 **This Agreement may be executed in one or more counterparts**, each of which shall be deemed to be an original and which counterparts
803 together shall constitute one and the same Agreement of the Parties.
804 **NOTICE TO PARTIES: WHEN SIGNED, THIS AGREEMENT IS A BINDING CONTRACT.** Parties to this transaction are
805 advised to consult a Pennsylvania real estate attorney before signing if they desire legal advice.
806 Return of this Agreement, and any addenda and amendments, including **return by electronic transmission**, bearing the signatures of all
807 parties, constitutes acceptance by the parties.
808 KG_____ Buyer has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code §35.336.
809 KG_____ Buyer has received a statement of Buyer's estimated closing costs before signing this Agreement.
810 KG_____ Buyer has received the Deposit Money Notice (for cooperative sales when Broker for Seller is holding deposit money)
811        before signing this Agreement.
812 KG_____ Buyer has received the Lead-Based Paint Hazards Disclosure, which is attached to this Agreement of Sale. Buyer has
813        received the pamphlet Protect Your Family from Lead in Your Home (for properties built prior to 1978).
814 BUYER *Ketty Guerrero*_____ DATE 02/13/2024
815 BUYER _____ DATE _____
816 BUYER _____ DATE _____
817 Seller has received the Consumer Notice as adopted by the State Real Estate Commission at 49 Pa. Code § 35.336.
818 Seller has received a statement of Seller's estimated closing costs before signing this Agreement.
819 SELLER *Craig Deimler* (dotloop verified 02/13/24 8:24 PM EST Y5XQ-THGX-DAXY-MNZZ) DATE _____
820 SELLER _____ DATE _____
821 SELLER *William Fisher Deimler* (dotloop verified 02/13/24 8:44 PM EST ZFLO-TAZ3-YIB2-XOOU) DATE _____

ASR Page 14 of 14

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| CRAIG BRADLEY DEIMLER | : | CASE NO. 1:20-bk-00841-HWV |
| WILLIAM OLIVER FISHER-DEIMLER | : | |
| a/k/a WILLIAM OLIVER FISHER DEIMLER | : | CHAPTER 13 |
| f/k/a WILLIAM OLIVER FISHER | : | |
| Debtors | : | |
| | : | |
| CRAIG BRADLEY DEIMLER | : | |
| WILLIAM OLIVER FISHER-DEIMLER | : | |
| a/k/a WILLIAM OLIVER FISHER DEIMLER | : | |
| f/k/a WILLIAM OLIVER FISHER | : | |
| Movants | : | |
| | : | |
| v. | : | |
| | : | |
| PHFA | : | |
| DAUPHIN COUNTY COMMISSIONERS | : | |
| DAUPHIN COUNTY TAX CLAIM BUREAU | : | |
| CITY OF HARRISBURG | : | |
| CAPITAL REGION WATER | : | |
| JACK N. ZAHAROPOULOS, ESQUIRE | : | |
| Respondents | : | |

## ABBOTTS DAIRIES AFFIDAVIT

Debtors' counsel, Gary J. Imblum, Esquire, inquired with the realtor, Traci Moffitt, and was informed of the following:

1. Subject property was first listed for sale on October 12, 2023.

2. The original list price was $130,000.00.

3. Subject property was then temporally removed from the market so it coulse be cleaned up so as to be more presentable.

4. When subject property was relisted on the Multi-List, the listing price adjusted upward to $135,000.00.

5. There were a total of six (6) showings, all at the $135,000.00 price.

6. There were two (2) offers received.

7. The offer that was rejected was rejected since the buyers needed 6% of sellers help.

8. The buyer is not related to the seller. There is no connection between the proposed buyer, its owner and/or investors, and the Debtors.

Respectfully submitted,

DATED: 2/21/2024         _____
                         Gary J. Imblum
                         Attorney Id. No. 42606
                         4615 Derry Street
                         Harrisburg, PA 17111
                         (717) 238-5250
                         Fax No. (717) 558-8990
                         gary.imblum@imblumlaw.com
                         Attorney for Debtors

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: | : | |
| CRAIG BRADLEY DEIMLER | : | CASE NO. 1:20-bk-00841-HWV |
| WILLIAM OLIVER FISHER-DEIMLER | : | |
| a/k/a WILLIAM OLIVER FISHER DEIMLER | : | CHAPTER 13 |
| f/k/a WILLIAM OLIVER FISHER | : | |
| Debtors | : | |
| | : | |
| CRAIG BRADLEY DEIMLER | : | |
| WILLIAM OLIVER FISHER-DEIMLER | : | |
| a/k/a WILLIAM OLIVER FISHER DEIMLER | : | |
| f/k/a WILLIAM OLIVER FISHER | : | |
| Movants | : | |
| | : | |
| v. | : | |
| | : | |
| PHFA | : | |
| DAUPHIN COUNTY COMMISSIONERS | : | |
| DAUPHIN COUNTY TAX CLAIM BUREAU | : | |
| CITY OF HARRISBURG | : | |
| CAPITAL REGION WATER | : | |
| JACK N. ZAHAROPOULOS, ESQUIRE | : | |
| Respondents | : | |

## ORDER

**Upon consideration** of Debtors' Motion to Sell Real Estate Free and Clear of Liens Re: 2428 Mercer Street, Harrisburg, Dauphin County, Pennsylvania, and it appearing that no Objection or Answer was filed to the Motion by the time set forth in an Order, good reason appearing therefore, no objections appearing thereto, it is hereby declared that the Buyer (and/or its designee) is a good faith purchaser for purposes of Section 363(m) and (n) and for purposes of *In re Abbotts Dairies of Pennsylvania Inc.*, 788 F.2d 143 (3rd Cir. 1986);

**IT IS HEREBY ORDERED AND DECREED** that Federal Bankruptcy Rule 6004(h) is not applicable, and the real property may be sold and purchased immediately upon entry of Order of Court approving same and that the sale of real estate at 2428 Mercer Street, Harrisburg, Dauphin

County, Pennsylvania, including all fixtures present at the showing, free and clear of liens, to Ketty Guerrero for $135,000.00 is approved and distribution of the proceeds as set forth below shall be permitted:

1. Payment of all closing costs for which Debtors are liable.

2. Payment of attorneys fees in the amount of $3,500.00, to be applied to Debtors' costs and Attorney fees, billed on an hourly basis, and approved by the Bankruptcy Court.

3. Payment of any and all other miscellaneous fees involved with the sale.

4. Payment of any liens and mortgages.

5. As long as same is a valid lien on subject real estate, payment in full of Dauphin County Tax Claim Bureau real estate taxes, if any, or else the sale will not occur.

6. As long as same is a valid lien on subject real estate, payment in full of PHFA mortgage, or else the sale will not occur.

7. As long as same is a valid lien on subject real estate, payment in full of Dauphin County Commissioners mortgage, or else the sale will not occur.

8. If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then payment to Trustee Jack N. Zaharopoulos in an amount up to the amount necessary to fully fund the Plan, less any amount otherwise payable to a secured creditor pursuant to Debtors' Plan, which is, in fact, paid at settlement.

9. If there are net proceeds remaining after paying all of the costs, fees and liens set forth in the preceding paragraphs, then payment of any and all attorney fees owed to Debtors' counsel for representation in the above matter and which have been previously approved by the Court.

10. If there are net proceeds remaining after paying all the costs, fees and liens set forth in the preceding paragraphs, then the remaining balance, if any, shall be distributed to the Debtors.

USPS FIRST CLASS MAILING RECIPIENTS:
Parties with names struck through or labeled CM/ECF SERVICE were not served via First Class USPS Mail Service.

CERTIFIED 9589071052700725635072
DAUPHIN COUNTY TAX CLAIM BUREAU
2 S. 2ND STREET, SUITE 1
HARRISBURG, PA 17101

CERTIFIED 9589071052700725635102
PHFA
211 N. FRONT STREET
HARRISBURG, PA 17101

CERTIFIED 9589071052700725635096
LEON P. HALLER, ESQUIRE
PURCELL, KRUG AND HALLER
1719 N. FRONT STREET
HARRISBURG, PA 17102-2392

CERTIFIED 9589071052700725635065
DAUPHIN COUNTY COMMISSIONERS
PO BOX 1295
HARRISBURG, PA 17108

CERTIFIED 9589071052700725635034
CAPITAL REGION WATER
BILLING AND COLLECTIONS UNIT
100 PINE DRIVE
HARRISBURG, PA 17103

CERTIFIED 9589071052700725635058
CLINTON J. WEBB, ESQUIRE
SALZMANN HUGHES, PC
79 ST. PAUL DRIVE
CHAMBERSBURG, PA 17201

CERTIFIED 9589071052700725635041
CITY OF HARRISBURG
DEPARTMENT OF PUBLIC WORKS
1820 PAXTON STREET
HARRISBURG, PA 17103

CERTIFIED 9589071052700725635089
HARRISBURG SCHOOL DISTRICT/CITY OF HARRISBURG
10 N. 2ND STREET, SUITE 103
HARRISBURG, PA 17101

DAUPHIN COUNTY TAX CLAIM BUREAU
2 S. 2ND STREET, SUITE 1
HARRISBURG, PA 17101

PHFA
211 N. FRONT STREET
HARRISBURG, PA 17101

LEON P. HALLER, ESQUIRE
PURCELL, KRUG AND HALLER
1719 N. FRONT STREET
HARRISBURG, PA 17102-2392

DAUPHIN COUNTY COMMISSIONERS
PO BOX 1295
HARRISBURG, PA 17108

CAPITAL REGION WATER
BILLING AND COLLECTIONS UNIT
100 PINE DRIVE
HARRISBURG, PA 17103

CLINTON J. WEBB, ESQUIRE
SALZMANN HUGHES, PC
79 ST. PAUL DRIVE
CHAMBERSBURG, PA 17201

CITY OF HARRISBURG
DEPARTMENT OF PUBLIC WORKS
1820 PAXTON STREET
HARRISBURG, PA 17103

HARRISBURG SCHOOL DISTRICT/CITY OF HARRISBURG
10 N. 2ND STREET, SUITE 103
HARRISBURG, PA 17101